By the Court,

Bronson, J.
Stage coach proprietors, and other carriers by land and water, incur a very different responsibility in relation to the passenger and his baggage. For an injury to the passenger, they are answerable only where there has been a want of proper care, diligence or skill; but in relation to baggage they are regarded as insurers, and must answer for any loss not occasioned by inevitable accident or the public enemies. As the point, though made, was not discussed by the defendant’s counsel, I shall content myself with referring to a few cases to prove that they are liable as common carriers, for the loss or injury of the property of the passenger. Orange Co. Bank v. Brown, 9 Wendell, 85. Camden Company v. Burke, 13 id. 611. Brooke v. Pickwick, 4 Bing. 218. 4 Esp. R. 177. 2 Kent, 601. The fact that the owner is present, or sends his servant to look after the property, does not alter the case. Robinson v. Dunmore, 2 Bos. & Pull. 418. Chambre, J. said, “It has been determined, that if a man travel in a stage coach and take his portmanteau with him, though he has his eye upon the portmanteau, yet the carrier is not absolved from his responsibility, but will be liable if the portmanteau be lost.” The liability of a carrier is like that of an innkeeper ; and it was said in Calye’s case, 8 Co. 63, that “ it is no ex *237 cuse for the innkeeper to say that he delivered the guest the key of the chamber in which he lodged, and that he left the door open ; but he ought to keep the goods and chattels of his guest there in safety.” When there is no fraud, the fact that the owner accompanies the property, cannot affect the principle on which the carrier is charged in case of loss.
The principal question in the cause arises out of the notice given by the coach proprietors, that baggage carried by the Telegraph line would be at the risk of the owner : and the first enquiry is, whether there was sufficient evidence to charge the plaintiff with a knowledge of the notice. If we are to follow the current of modern English decisions on this subject, it cannot be denied that there was evidence to be left to a jury, and upon which they might find that the plaintiff had seen the notice. But I think the carrier, if he can by any means restrict his liability, can only do so by proving actual notice to the owner of the property. I agree to the rule laid down by Best, C. J., in Brooke v. Pickwick, 4 Bing. 218, decided in 1827, when the courts of Westminster Hall had commenced retracing their steps in relation to the liability of carriers and were endeavouring to get back on to the firm foundation of the common law. He said, “ If coach proprietors wish honestly to limit their responsibility, they ought to announce their terms to every individual who applies at their office, and at the same time to place in his hands a printed paper, specifying the precise extent of their engagement. If they omit to do this, they attract customers under the confidence inspired by the extensive liability which the common law imposes upon carriers, and then endeavour to elude that liability by some limitation which they have not been at the pains to make known to the individual who has trusted them.”
I should be content to place my opinion upon the single ground, that if a notice can be of any avail, it must be directly brought home to the owner of the property ; and that there was no evidence in this case which could properly be submitted to a jury to draw the inference, that the plaintiff knew on what terms the coach proprietor intended *238 to transact his business. But other questions have been discussed; and there is another case before the court* where the judge at the circuit thought the evidence sufficient to charge the plaintiff with notice. It will therefore be proper to consider the other questions which have been made by the counsel.
Can a common carrier restrict his liability by a general notice, in any form, brought home to the opposite party ? Without intending to go much at large into this vexed question, it will be necessary to state some leading principles relating to the duties and liabilities of the carrier, and the ground upon which his responsibility rests.
The rules of the common law in relation to common carriers, are simple, well defined, and what is no less' important, well understood. The carrier is liable for all losses except those occasioned by the act of God or the public enemies. He is regarded as an insurer of the property committed to his charge, and neither destruction by fire, nor robbery by armed men, will discharge him from liability. Holt, C. J. in pronouncing his celebrated judgment in the ease of Coggs v. Barnard, 2 Ld. Raym. 918, said, “ This is a political establishment, contrived by the policy of the law, for the safety of all persons, the necessity of whose affairs oblige them to trust |hese sorts of persons, that they may be safe in their ways of. dealing.” In Forward v. Pittard, 1 T. R. 27, where the ^carrier was held liable for a loss by fire, Lord Mansfield, says, that “ to prevent litigation, collusion, and the necessity of going into circumstances impossible to be unravelled, the law presumes against the carrier, unless he shows it was done by the king’s enemies, or by such act as could not happen by the intervention of man, as storms, lightnings and tempests.” And in relation to a loss by robbery he said, “ the true reason is, for fear it may give room for collusion, that the master may contrive to be robbed on purpose, and share the spoil.” The rule has been fully recognized in this* state. Colt v. McMechen, 6 Johns. R. 160. Elliot v. Rossell, 10 Johns. R. 1. Kemp v. Coughtry, 11 Johns. R. 107. In Roberts v. Turner, 12 Johns. *239 R. 232, Spencer, J. said, the carrier “ is held responsible as an insurer of the goods, to prevent combinations, chicanery and fraud.”
A common carrier exercises a public employment, and consequently has public duties to' perform. He cannot, like the tradesman or mechanic, receive or reject a customer at pleasure, or charge any price that he chooses, to demand. If he refuse to receive a passenger or carry goods according to the course of his particular employment, without a sufficient excuse, he will be liable to an action; and he can only demand a reasonable compensation for his services and the hazard which he incurs. 2 Ld. Ray. 917. Bac., Ab., Carriers (B.) Skin. 279. i Salk. 249, 50. 5 Bing. 217. 3 Taunt. 272, per Lawrence, J. 2 Kent, 599. Story on Bailments, 328. Jeremy on Carriers, 59.
It has been said that the carrier is liable in respect of his reward. Lane v. Cotton, 1 Salk. 143. Lord Coke" says, “ he hath his hire, and thereby implicitly undertaketh the safe delivery of the goods delivered to him.” Co. Litt. 89, (a.) The carrier may no doubt demand a reward proportioned to the services he renders and the risk he incurs; and having taken it, he is treated as an insurer, and bound to the safe delivery of the property. But the extent of his liability does not depend on the terms of his contract; it is declared by law. His undertaking when reduced to form, does not differ from that of any other person who may agree to carry goods from one place to another; and yet, one who does not usually exercise this public employment, will incur no responsibility beyond that of an ordinary bailee for hire ; he is not answerable for a loss by any means against which he could not have guarded by ordinary diligence. It is not the form of the contract, but the policy of the law, which determines the extent of the carrier’s liability. In Ansell v. Waterhouse, 2 Chit. R. 1, which was an action on the case against the proprietor of a stage-coach for an injury to the plaintiff’s wife, Holroyd, J. said, “ this action is founded on what is quite collateral to the contract, if any ; and the terms of the contract, unless changing the duty of a common carrier, are in this case quite immaterial. The declaration states an *240 obligation imposed upon him by the law. This is an action against a person, who, by ancient law, held as it were a public office, and was bound to the public. This action is founded on general obligation of the law.” In Fonuard v. Pittard, 1 T. R. 27, Lord Mansfield said, “ It appears from all the cases for a 100 years back, that there are events for which the carrier is liable independent of his contract. By the nature of his contract he is liable for all due care and diligence; and for any negligence he is suable on his contract. But there is a further degree of responsibility by the custom of the realm, that is, by the common law; a carrier is in the nature of an insurer.” See also Hide v. Proprietors, &c., 1 Esp. R. 36.
The law in relation to carriers has in some instances operated with severity, and they have been charged with losses against which no degree of diligence could guard. But cases of this description are comparatively of rare occurrence ; and the reason why they are included in the rule of the common law, is not because it is fit in itself that any man should answer without a fault, but because there are. no means of effectually guarding the public against imposition and fraud, without making the rule so broad, that it will sometimes operate harshly. It was well remarked by Best, C. J. in Riley v. Horne, 5 Bing. 217, that “when goods are delivered to the carrier, they are usually no longer under the eye of the owner; he seldom follows or sends any servant with them to their place of destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the carrier’s servants, and they, knowing that they could not be contradicted, would excuse their masters and themselves.” These remarks lose little of their force when applied to the case, of passengers in stages, steam boats and rail road cars. For although they are in the neighborhood of their property, it is neither under their eye, nor have they any efficient means of protecting it against the consequences of negligence and fraud. The traveller is usually *241 among strangers ; his property is in the hands of men who are sometimes selected with little regard to their diligence and fidelity; and if the remedy of the owner in case of loss depend on the question of actual negligence or fraud, he must make out his right to recover by calling the very men whose recklessness or frailty has occasioned the injury. It was remarked by Best, C. J. in Brooke v. Pickwick, 4 Bing. 218, that, “ though coach proprietors of the present day are a respectable and opulent class, many of the persons employed by them, resemble those whom the common law meant to guard against.”
There is less of hardship in the case of the carrier, than has sometimes been supposed; for while the law holds him to an extraordinary degree of diligence, and treats him as an insurer of the property, it allows him, like other insurers, to demand a premium proportioned to the hazards of his employment. The rule is founded upon a great principle of public policy; it has been approved by many generations of wise men; and if the courts were now at liberty td make instead of declaring the law, it may well be questioned whether they could devise a system which on the whole, would operate more beneficially. I feel the more confident in this remark from the fact, that in Great Britain, after the courts had been perplexed for thirty years with various modifications of the law in relation to carriers, and when they had wandered too far to retrace their steps, the legislature finally interfered, and in all its most important features restored the salutary rule of the common law.
The doctrine that a carrier might limit his responsibility by a general notice brought home to the employer prevailed in England for only a short period. In Smith v. Horne, 8 Taunt. 144, Burrough, J. said, “ the doctrine of notice was never known until the case of Forward v. Pittard, 1 T. R. 27, which I argued many years ago.” That case was decided in 1785, and it is remarkable that it does not contain one word on the subject of notice. If that question was in any form before the court, it is not mentioned by the reporter; and the decision was against the carrier, although the loss was occasioned by fire, without his default. The *242 doctrine was first "recognized in Westminster Hall in 1804, when the case of Nicholson v. Willan, 5 East, 507, was decided. Lord Ellenborough said, the practice of making a. “ special acceptance” had prevailed for a long time, and that there was “ no case to be met with in the books in which the right of a carrier thus.to limit by special contract his own responsibility, has ever been by express decision denied.” Whatever may be the rule where there is in fact a special contract, thadearned judge could not have intended to say, that a carrier had for a long time been allowed to limit his liability by a general notice, or that a special contract had been implied from such a notice ; for he refers to no case in support of the position, and would have searched in vain to find one. Only eleven years before, (in 1793) Lord Kenyon had expressly laid down a different rule in Hide v. Proprietors, &c., 1 Esp. R. 36. He said, “ there is a difference where a man is chargeable ' by law generally, and where on his contract. Where a man is bound to any duty and chargeable to a certain extent by the operation of law, in such case, he cannot by any act of his own discharge himself.” And he put the case of common carriers, and' said, they cannot discharge themselves “ by any act of their own, as by giving notice, for example to that effect.” This case was afterwards before the K. B., but on another point. 1 T. R. 389.
The doctrine in question was not received in Westminster Hall without much doubt; and although it ultimately obtained something like a firm footing, many of the English judges have expressed their regret that it was ever sanctioned by the courts. Departing as it did from the simplicity and certainty of the common law rule, it proved one of the most fruitful sources of legal controversy which has existed in modern times. When it was once settled that a carrier might restrict his liability by a notice brought home to his employer, a multitude of questions sprung up in the courts vyhich no human foresight could have anticipated. Each carrier adopted such a form of notice as he thought best calculated to shield himself from responsibility without the lost of employment; and the legal effect of each par *243 ticular form of notice could only be settled by judicial decision. Whether one who had given notice that be would not be answerable for goods beyond a certain value unless spedaily entered and paid for, was liable in case of loss to the extent of the value mentioned in the notice, or was discharged altogether; whether, notwithstanding the notice he was liable for a loss by negligence, and if so, what degree of negligence would charge him ; what should be sufficient evidence that the notice came to the knowledge of the employer, .whether it should be left to the jury to presume that he saw it in a newspaper which he was accustomed to read, or observed it posted up in the office where the carrier transacted his business; and then, whether it was painted in large or small letters, and whether the owner went himself or sent his servant with the goods, and whether the servant could read; these, and many other questions were debated in the courts, while the public suffered an almost incalculable injury in consequence of the doubt and uncertainty which hung over this important branch of the law. See 1 Bell’s Com. 474. After years of litigation, parliament interfered in 1830, and relieved both the courts and the public, by substantially re-asserting the rule of the common law. Stat. 1 Wm. 4, c. 68.
Without going into a particular examination of the English cases, it is sufficient to say that the question has generally been presented, on a notice by the carrier that he would not be responsible for any loss beyond a certain sum, unless the goods were specially entered and paid for; and the decisions have for the most part only gone far enough to say, that if the owner do not comply with the notice by stating the true value of the goods and having them properly entered, the carrier will be discharged. In ¡.these cases, the carrier had not attempted to exclude all responsibility. But there are two nisiprius decisions which allow the carrier to cast off all liability whatever. In Maving v. Todd, 1 Stark. R. 72, the defendant had given notice that he would not answer for a loss by fire, and such a loss having occured, Lord Ellenborough thought that carriers might exclude their liability altogether, and nonsuited the *244 plaintiff. In Lesson v. Holt, 1 Stark. R. 186, tried in 1816, he made a like decision ; though he very justly remarked, that “ if this action had been brought twenty years ago, the defendant would have been liable ; since by the common law a carrier is liable in all cases except two.” We have here, what will be found in many of the cases, a very distinct admission that the courts had departed from the law of the land, and allowed, what Jeremy’s Treatise on Carriers, 35, 6, very properly terms “ recent innovations.”
Some of the cases which have arisen under a general notice have proceeded on the ground of fraud, Baston v. Donovan, 4 B. & Aid. 21; others on the notion of a special acceptance or special contract, Nicholson v. Willan, 5 East, 507. Harris v. Packwood, 3 Taunt 271; while in some instances it is difficult to say what general principle the court intended to establish.
So far as the cases have proceeded on the ground of fraud, and can properly be referred to that head, they rest ¡on a solid foundation ; for the common law abhors fraud, and will not fail to overthrow it in all the forms, whether new or old, in which it may be manifested. As the carrier incurs a heavy responsibility, he has a right to demand from the employer such information as will enable him to decide on the proper amount of compensation for his services and risk, and the degree of care which he ought to bestow in discharging his trust; and if the owner give an answer which is false in a material point, the carrier will be absolved from the consequences of any loss not occasioned by negligence or misconduct. The case of Kenrig v. Eggleston, Aleyn, 93, was decided in 1649. The plaintiff delivered a box to the porter of the carrier, saying “ there was a book and tobacco in the box,” when in truth it contained £100 in money, besides. Roll, J. thought the carrier was nevertheless liable for a loss by robbery ; “ but in respect of the intended cheat to the carrier, he told the jury they might ■consider him in damages.” The jury however, found the whole sum (abating the carriage) for the plaintiff, quod durum videbatur circumstantibus. In Gibbon v. Paynton, 4 Burr. 2298, Lord Mansfield said, this’ was a case of fraud *245 and he “ should have agreed in opinion with the drcumstantibus.” In Tyly v. Morrice, Carth. 485, two bags of money sealed up were delivered to the carrier, saying they contained £206, and he gave a receipt for the money. In truth the bags contained £450, and the carrier having been robbed, paid the- £200; and in this action brought to recover the balance, the chief justice told the jury, that “ since the plaintiffs had taken this course to defraud the carrier of his reward, they should find for the defendant.” And the same point was decided in another action against the same carrier. In Gibbon v. Paynton, 4 Burr. 2298, £100 in money was hid in hay in an old nail bag, which fact the plaintiff concealed from the carrier; and the money having been stolen, the court held that this fraud would discharge the defendant. In the case of the Orange Co. Bank v. Brown, 9 Wendell, 85, the agent of the plaintiffs put $11,000 in bank bills in his trunk, and delivered it to the captain of the steam-boat as his baggage. The court held that the ' term baggage, would only include money for the expenses of travelling, and not a large sum, as in this case, taken for the mere purpose of transportation; and it was said that the conduct of the plaintiff’s agent was a virtual concealment as to the money, that “ his representation of his trunk and the contents as baggage, was not a fair one, and was calculated to deceive the captain.” The owner is not bound to disclose the nature or value of the goods; but if he is inquired of by the carrier, he must answer truly. Phillips v. Earle, 8 Pick. 182.
Fraud cannot, I think, be imputed to the owner from the mere fact that he delivers goods after having seen a general notice published by the carrier, whatever may be its purport. If the carrier wishes to ascertain the extent of his risk, he© should inquire at the time the goods are delivered ; and then if he is not answered truly he will have a defence. See 4 Bing. 218. A different rule practically changes the burden of proof. At the common law, it is enough that the owner prove the undertaking of the carrier, and that the goods did not reaph their destination. But this doctrine of implying fraud from a notice, requires him to go further, and show that he complied with the terms of the advertise *246 ment. He may have informed the carrier truly of the value of the goods—there may be no fraud, but still he is required to prove himself innocent before he can recover. Independdent of a notice, the onus would rest, where upon general principles, it ought to rest, on him who imputes fraud ; and the carrier could not discharge himself without showing some actual misrepresentation or fraudulent concealment. It does not lie on the employer to show how the loss was occasioned, or that he has acted properly ; but the law presumes against the carrier, until he proves that the loss happened by means or under circumstances for which he is not answerable. 1 T. R. 33. Murphy v. Staton, 3 Munf. (Va.) 239. Story on Bail. 338.
But it is enough for this case, that the question of fraud can never arise under such a notice as was gjiven by the defendant. He did not say to the public that he would not be answerable for baggage beyond a certain sum, unless the owner disclosed the value ; he said he would not be answerable in any event. It was, in effect, a notice that he would not abide the liabilities which the law, upon principles of public policy, had attached to his employment. If the notice can aid the defendant in any form, it certainly does not go to the question of fraud.
The only remaining ground of argument in favor of the carrier is, that a special contract may be inferred from the notice. Independent of the modern English cases, it.seems never to have been directly adjudged that the liability of the carrier can be restricted by a special contract. Nox, (Maxims,) 92, after speaking of a loss by negligente, says, “ If a carrier would refuse to carry unless a promise were made to him that he should not be digged with any such miscarriage, that promise were void.”" If he cannot stipulate for a partial, it is difficult to see how he can for a total^exemption from liability. In Nicholson v. Willan, 5 East, 513, Lord Ellenborough found no direct adjudication in favor of the position that a carrier may limit his responsibility by a special contract; but he relied on the fact that such an exemption had never been “ by express decision denied.” Although this mode of reasoning is not the most conclusive, *247 I shall not deny that the carrier may by express contract restrict his liability; for though the point has never been expressly adjudged, it has often been assumed as good law. Aleyn, 93. 4 Co. 84, note to Southcoate’s case. 4 Burr. 2301, per Yates, J. 1 Vent. 190, 238. Peake, N. P. Cas. 150. 2 Taunt. 271. 1 Stark. R. 186. If the doctrine be well founded, it must, I think, proceed on the ground that the person entrusted with the goods, although he usually exercises that employment, does not in the particular case act as a common carrier. The parties agree that in relation to that transaction he shall throw off his public character, and like other bailees for hire, only be answerable for negligence or misconduct. If he act as a carrier, it is difficult to understand how he can make a valid contract to be discharged from a duty or liability imposed upon him by law.
But conceding that there may be a special contract for a restricted liability, such a contract cannot, I think be inferred from a general notice brought home to the employer. The argument is, that where a party delivers goods to be. carried after seeing a notice that the carrier intends to limit his responsibility, his assent to the terms of the notice may be implied. But this argument entirely overlooks a very important consideration. Notwithstanding the notice, the owner has a right to insist that the carrier shall receive the goods subject to all the responsibilities incident to bis employment. If the delivery of goods under such circumstances authorizes an implication of any kind, the presumption is as strong, to say the least, that the owner intended to insist on his legal rights, as it is that he was willing to yield to the wishes of the carrier. If a coat be ordered from a mechanic after he has given the customer notice that he will not furnish the article at a less price than one hundred dollars, the assent of the customer to pay that sum, though it be double the value, may perhaps be implied; but if the mechanic had been under a legal obligation, not only to fur- . nish the coat, but to do so at a reasonable price, no such implication could arise. Now the carrier is under a legal obligation to receive and convey. the ®goods safely, or answer for the loss. He has-mo right to prescribe any other *248 terms; and a notice can at the most only amount to a prop0sa[ for a special contract, which requires the assent of the other party. Putting the matter in the most; favorable ^S^t f°r the carrier, the mere delivery of goods after seeing . a notice, cannot warrant a stronger presumption that the owner intended to assent to a restricted liability on the part of the carrier, than it does that he intended to insist on the liabilities imposed by law ; and a special contract cannot be implied where there is such an equipoise of probabilities.
Making a notice the foundation for presuming a special contract, is subject to a further objection. It changes the burden of proof. Independent of the notice, it would be sufficient for the owner to prove the delivery and loss of the goods; and it would then lie on .the carrier to discharge himself by showing a special contract for a restricted liability. But giving effect to the notice, makes it necessary for the owner to go beyond the delivery and loss of the goods, and prove that he did not assent to the proposal for a limited responsibility. Instead of leaving the onus of showing assent on him who sets up that affirmative fact, it is thrown upon the other party, and he is required to prove a negative, that he did not assent.
After all that has been or can be said in defence of these notices, whether regarded either as a ground for presuming fraud or implying a special agreement, it is impossible to disguise the fact that they are a mere contrivance to avoid the liability which the law has attached to the employment of the carrier. If the law is too rigid, it should be modified by the legislature, and not by the courts. It has been admitted over and over again by the most eminent English judges, that the effect given to these notices was a departure from the common law; and they have often regretted their inability to get back again to that firm foundation. The doctrine that a carrier may limit his responsibility by a notice, was wholly unknown to the common law at the time of our revolution. It has never been received in this, nor so far as I have observed, in any of the other states. The point has been raisecP, but not directly decided. Barney v. Prentiss, 4 Har. & Johns. R. 317. Dwight v. Brewster, *249 1 Pick. 50. Should it now be received among us, it will be after it has been tried, condemned and abandoned in that country to which we have been accustomed to look for light on questions of jurisprudence.
The act of parliament already mentioned enumerates various articles of great value in proportion to the bulk, and others which are peculiarly exposed to damage in transportation, and declares that the carrier shall not be liable for the loss ori injury of those articles when the value exceeds £10, unless at the time of delivery the owner shall declare the nature and value of the property, and pay the increased charge o which the carrier is allowed to make for his risk and care. If the owner complies with this requirement, the carrier must give him a receipt for the goods, “ acknowledging the same to have been insured;” and if he refuse to give the receipt he remains “ liable and responsible as at the common law” The provision extends to the proprietors of stage-coaches as well as. all other carriers, and to property which may “ accompany the person of any passenger” as well as other goods ; and the statute declares that after the first day of September, 1830, “ no public notice or declaration heretofore made, or hereafter to be made, shall he deemed or construed to limit, or in any wise affect the liability at common law” of any carriers ; but that all and every such carrier shall be “liable as at the common law to answer ” for the loss or injury of the property, “ any public notice or declaration by them made and given contrary thereto, or in any wise limiting such liability, notwithstanding.” The only modification of the common law rule in relation to carriers made by this statute, is that which requires the owner, without a special request, to disclose the nature and value of the package, when it contains articles of a particular description. The premium for care and risk, the carrier might have required before. In relation to all articles not enumerated, and in relation to those also, if the owner comply with the requirements of the act, the carrier is declared liable as an insurer, and must answer “ as at the common law.” The whole doctrine which had *250 sprung up under notices, is cut up by the roots ; and in such language as renders it apparent that the legislature deemed it an innovation on the law of the land.
If after a trial of thirty years the people of Great Britain, whose interest and pursuits are not very dissimilar to our own, have condemned the whole doctrine of limiting the carrier’s liability by a notice ; if after a long course of legal controversy they have retraced their steps, and returned to the simplicity and certainty of the common law rule; we surely ought to profit by their experience, and should hesitate long before we sanction a practice which not only leads to doubt and uncertainty concerning the rights and duties of the parties, but which encourages negligence, and opens a' wide door to fraud.
If the policy of the law in relation to carriers were more questionable than I think it is, it would be the business of the legislature, and not of the courts, to apply the proper remedy. The plaintiff is entitled to judgment in pursuance of the stipulation contained in the case.
The Chief Justice concurred.
Cowen, J. concurred in the result, for the reasons assigned by him in the case of Cole v. Goodwin and Story, post.
Judgment for the plaintiff.

 The case of Cole y. Goodwin and Story, post.