# Bingham *against* Rogers.

Common carriers may by special contract limit the extent of their responsibility for the safety of goods delivered to them to be carried.

In an action against a common carrier to recover the value of goods delivered to him to be carried, the owner of the goods, being the plaintiff in the action, is not a competent witness to prove the contents of the trunk or the value of the articles which it contained.

6ws495
166　189
6ws495
183　178
6 WS 495
19 SC ¹ 19

**ERROR** to the District Court of *Allegheny* county.

William F. Rogers against John Bingham and others, late owners of the " Emigrant Line." The defendants were common carriers by railroad and canal between Philadelphia and Pittsburgh. This was an action on the case against them for negligence, &c. whereby the plaintiff, as he alleged in the declaration, lost a trunk or box containing the following articles, viz:

Tredgold on the Construction of Steam Engines and Boats, illustrated by a volume of Model Engravings, $30. Templeton's Millwright's Guide, $7. Other valuable books, $7. A stamped article of agreement between the Bahia Steam Engine Navigation Company and William F. Rogers, accompanied with letters of reference, $242. A box of jewelry, of great value, collected principally in South America, $91.84. A pocket-book containing a note on the Bank of England for the payment of £50, $242. A complete set of mathematical drafting instruments, $5.68. A brass model for a steam engine, $250.

The plaintiff produced and proved the execution of the following receipt:

*Bingham's Emigrant Line, Philad., October* 21, 1840.

No. 156. Received of Messrs Rogers & M'Donald $32.51 for two seats to Pittsburgh and 545 pounds extra baggage, including one trunk, already forwarded.

Each passenger entitled to 50 pounds
baggage free. All baggage at the
risk of the owner.

BINGHAM & BROTHERS,
*Per* M. DAVIS.

The plaintiff went on in one of the defendants' boats, with other

emigrants, and their baggage. It was proved that the trunk said to have been lost was marked with the plaintiff's name. Every effort was made by the defendants to recover the box, but without success. On the day previous to the date of the above receipt and of the plaintiff's departure from Philadelphia, he and some of his friends went with their luggage to the defendants' depot, intending to take passage to Pittsburgh. After the luggage had been delivered to the agents of the defendants, some dispute arose about the amount of fare. The plaintiff refused to pay what was asked, and the agent gave him back his boxes and trunk, and he did not go that day. The next day the plaintiff went to the depot, and alleged that one of his boxes was missing, and must have gone on; and the defendants then gave the foregoing receipt, and the plaintiff went on.

After showing the delivery and loss of the box, the plaintiff offered his own deposition to prove the contents and their value. The defendants objected, on the ground that they were not articles of clothing, or necessary to a traveller, but common lumber or merchandise; but the court admitted the evidence, and sealed an exception.

The defendants requested the court to instruct the jury:

1. That the plaintiff was bound by the notice contained on the face of the receipt: "All baggage at the risk of the owner."

2. That there must first be a delivery of the goods to the care of the defendants before their liability can attach.

3. That the defendants are not liable if there was no intention on the part of the plaintiff to intrust his baggage to their care.

4. That after notice given limiting the risk, as above, on the part of the defendants, they are not liable, unless the plaintiff has shown that the loss was occasioned by either the misfeasance, malfeasance, or gross negligence of the defendants; and that the burthen of proving it lies on the plaintiff.

5. That the plaintiff was not a competent witness to prove the contents of his lost trunk beyond the ordinary articles of necessity or convenience to a person travelling, so as to charge the defendants.

The court below instructed the jury as follows:

"Common carriers are liable, as insurers, for the property committed to their care. It is contended that the defendants are released from their common law liability by the insertion of the following clause in the receipt or bill of lading given by their agent: 'All baggage at the risk of the owner.' But the court instruct you that common carriers cannot, by notice, limit their liability as to the safety of the goods. The risk is, in that respect, upon them, and cannot be shifted to the owner. They may, by notice brought home to the owner, require the latter to state the nature or value of the property, or may, for that purpose, make a special acceptance. But they cannot, by notice, rid

themselves of the duty imposed by law to be answerable for the goods, unless the loss accrued by inevitable accident, or the acts of public enemies, or the owner has been guilty of fraud. Such has been the uniform decision of this court. Their authority and reasons for this decision will be found stated at length in 19 *Wend.* 235, 251 ; 21 *Ibid.* 153, 354.

Your first inquiry will therefore be; was the trunk or chest in question delivered by the plaintiff into the custody of the defendants or their agent to be carried from Philadelphia to Pittsburgh, and lost or not delivered again to the plaintiff? This, of course, is a question of fact for you to decide. The plaintiff has proved the delivery by two witnesses, and by the bill of lading or receipt signed by the defendants' agent, by which it appears that the plaintiff paid an extra price for the carriage of his goods. The receipt of this trunk is attempted to be denied by the defendants' witnesses, who deny it in the face of their own receipt, given at the very time when the parties had the dispute whether the trunk had been sent on or not in the defendants' baggage-cars. Such testimony should be looked on with great suspicion. It is even doubtful whether it would have been received at all, if it had been objected to, as the witnesses might be said to be interested to clear themselves from negligence, for which they were liable to their masters. And usually a common carrier will not be permitted to give evidence to contradict the bill of lading signed by him, unless it be to prove that a fraud or imposition was practised in him. *Warden* v. *Greer*, (6 *Watts* 424).

If the jury should be of opinion that the trunk or box in question was delivered to the defendants and lost, the only other question will be the amount of damages. On this point the testimony of the plaintiff has been received to prove the contents of the trunk from necessity. Nevertheless, his testimony should be scanned with great caution and distrust, as he is directly interested. This is not the common case of a passenger by stage-coach from one city to another, whose trunk is presumed to contain but the common apparel and the necessary baggage of the owner. The defendant solicited the custom of emigrants. He charged a separate price for carrying their trunks and boxes. He knew well that emigrants carry more than their usual clothing. They travel with their little all, their whole personal estate along with them, their books, sometimes their tools of trade, and all their most cherished articles of personal property.

The plaintiff would appear to be a bachelor — came last from Havre, in France—had been in Brazil—was probably a machinist and engineer. Is there anything improbable in his statement of the things contained in this trunk ? — his books on engineering — his models—his personal ornaments, jewelry ? You are not bound by his valuation. He may set an extravagant or imaginary value upon them. Especially should you disregard the value put

[Bingham v. Rogers.]

on his papers establishing his character as a man and an engineer. A man may put an imaginary or fanciful value on many articles from certain association of ideas, as a ring with a deceased friend's hair, &c. But the jury should inquire their real value in market, or the cost and trouble in making them when they have no known market value. These principles will apply also to the valuation of the model. But although the plaintiff has in this case been admitted from necessity to prove the contents of his trunk as to all matters which an emigrant might be supposed to carry with him as personal property (not including merchandise or money), because there is the same necessity as in the cases cited, yet the same reasons given for not suffering him to prove money will apply in this case as in the case of *David* v. *Moore*, (2 *Watts & Serg.* 230).

You are, therefore, instructed not to include in your valuation the note for £50, not because the defendants in this case might not have been held liable for it, under the circumstances, if proved *aliunde*, but because it would be dangerous to permit the plaintiff to establish the amount by his own oath."

The jury found a verdict for the plaintiff for $537.60.

Errors assigned:

1. In instructing the jury that common carriers cannot by notice limit their liability for the safety of goods.

2. In admitting the plaintiff's deposition to prove the contents of the box and their value.

*Wylie* and *Williams*, for the plaintiff in error, contended that it was competent for common carriers to limit the extent of their liability by contract. *Co. Lit.* 89 *a; Jones Bail.* 103; *Burrow* 2300; *Carth.* 485; 1 *Salk.* 143; 19 *Wend.* 239, 266; *Ld. Raym.* 107, 918; 5 *Rawle* 179; 10 *Watts* 347; 1 *Stark. Ev.* 112; 9 *Watts* 87; *Story's Bail.* 549; 6 *Johns.* 180; 2 *Kent* 606; 5 *East* 507; 4 *Price Ex. Rep.* 31; 5 *Barn. & Ald.* 53; 1 *Hen. Bl.* 298; 3 *Taunt.* 264; 2 *M. & Sel.* 1; 8 *Term Rep.* 532; 4 *Barn. & Ald.* 39; 4 *East* 371; 8 *Taunt.* 144; 1 *Stark. Rep.* 72; 1 *Gow* 103. As to the admissibility of the plaintiff as a witness, they cited *Co. Lit.* 6 *b; Ld. Raym.* 191; 2 *Hawk.* 433; 3 *Wils.* 18; 2 *Watts & Serg.* 230; 9 *Wend.* 85; 1 *Pick.* 50; 3 *Watts & Serg.* 21.

*Darrah* and *Williams*, contra, on the first point, cited 1 *Esp. Rep.* 36; 1 *T. R.* 23; 9 *Watts* 87; 15 *E. C. L.* 422; 2 *Hill* 623; *Story's Bail.* 567; 16 *East* 244.

The opinion of the court was delivered by

Huston, J.—Much of the law of this, and perhaps every country, is founded on the usages of the people, and those usages vary as the business changes, or as the legislature interferes to modify and prescribe rules for the regulation of business and contracts

relating to business. The law relating to the liability of common carriers is very ancient, and is at least as old as the statutes of hue and cry, by which the vicinity was made liable for goods of which any person was robbed. These last are now obsolete or repealed. They were required by a state of barbarism and of sparse population, and by the fact that it was at least probable that many, if not all, in the neighbourhood were concerned in the robbery, or partook of the spoils. In such a state of society it was not unreasonable to suppose common carriers might know something of the persons by whom they were robbed—might give notice to the robbers, and share in the plunder. The state of society, the close settlement of the country, the vicinity of populous towns and the orderly life of the inhabitants of the country, have banished gangs of robbers pretty much. Still it remains the law that common carriers are liable for all losses not occasioned by the enemies of the country or the act of God.

In the process of time, stage-coaches for the carriage of passengers and their necessary clothing or baggage came into use, and the question of their liability, and to what extent, arose. These modes of conveyance had been unknown for centuries after the doctrine as to common carriers had been settled. There are intimations that if the owner is along, the care of his goods devolves on him and not on the owner of the vehicle. It, however, became understood that there was some responsibility on the coach owners, and they endeavoured to protect themselves by advertisements and notices. The effect of these was the subject of frequent discussion, and different judges at *Nisi Prius* gave different opinions. Even when removed to the courts in banc, the decisions of the Common Pleas and King's Bench did not always accord with each other. Perhaps they at length agreed that a notice in a gazette or hand-bill did not avail, unless on proof that it had been actually read by the owner of the goods. Acts of Parliament were passed during the reign of George III, defining and regulating the liability of stage owners, and many decisions in the English reports are founded on these, though the Act is not noticed in the opinions. At length it is apparent the danger was apprehended to the carrier and not from him. As the liability arose from the hire paid, it was provided that no person should recover beyond a certain sum, unless he gave notice of the value contained in his trunk.

It is admitted in 19 *Wend.* 246, 7, that cases are found from *Southcote's Case,* (4 *Coke* 84), down to *Nicholson* v. *Willan,* (5 *East* 513), and even later, 1 *Stark. R.* 186, where courts have assumed it as law, that a special printed or written notice given to the person sending goods, may limit the liability of the stage owner. The last Act in England, passed in 1836, I believe, is referred to, and it is stated that, except as to the specified articles, it had brought the responsibility of stage owners back to the common law as respects carriers. We quote Acts of Parliament, not

[Bingham v. Rogers.]

from the statute-book, but from extracts in reports.  I have met with what purports to be the 6th section of that Act, as follows: "Nothing in this Act shall extend or be construed to extend in any wise to affect any special contract between such mail contractor, stage coach proprietor or common carrier, and other parties, for the conveyance of goods and merchandise."  This is not going back to common law.  The 9th section provides that though the passenger has stated that his trunk contains articles of a certain value, and paid a price for such value, yet if it is lost, the stage owner shall not be liable beyond the articles and value which the owner shall prove by legal evidence.  Nothing can more strongly show the idea of the legislature that there was some danger of the stage owners being made to pay for what they never received, or more than the value of what they received.  The case in New York urges strongly the example of that great mercantile nation as of weight here, though the Act is not obligatory.

I come now to the decisions of this court.  At a time when our rivers were obstructed by falls and rapids and rocks, there were few carriers.  Several neighbours joined to build an ark or boat, to carry the produce of their own farms and some neighbouring farmers down some of our rivers in times when there was high water.  For a long time, it was not understood by the owners of boats or of goods that their liability was the same as that of carriers at common law.  See 8 *Serg. & Rawle* 533.  At length rocks were removed, and the navigation rendered more safe, and there were more boats, and more expertness and skill in those who navigated the rivers, and the common law doctrine came in; but I can well recollect the time on the Susquehanna when a higher price was paid to boatmen who engaged against all accidents except the act of God.  The common law doctrine is now generally understood, in courts and among boatmen, to apply.  On the Mississippi and its large branches insurance at an office is however common; perhaps because the boat-owners could not pay the amount of goods shipped.  To come to cases of stage owners and canals: In *Beckman* v. *Shouse*, (5 *Rawle* 179), it is said, "It seems to be settled, though many learned judges have expressed their regret, that carriers by land may by a special contract limit their responsibility, though not throw it entirely off, in case of gross negligence or fraud."  See also *Atwood* v. *The Reliance Company*, (9 *Watts* 89).

There is another point, of great and increasing importance in this case.  The trunk alleged to have been delivered to the carrier contained no clothing, but so many guard-chains and rings, &c. The article of agreement with the Bahia Steamboat Navigation Company, without stating its date or terms, or whether it had been completed or abandoned before the plaintiff left South America, or whether the company was ever organized or was broken, was one item sworn by the plaintiff to be worth $242.  Without

[Bingham v. Rogers.]

other evidence, it is not easy to say it was worth a cent. The brass model for a steam engine, called in the affidavit of the plaintiff a small brass model of an improved rotatory engine, the object of which was to overcome the dead power of steam—his own invention—worth $250, &c. We see and hear of so many improvements in steam engines, which please nobody but the inventor, and which are not feasible or practicable, that I would long hesitate to pay so dearly for any model never tried or approved by any but the inventor. Besides, if it was his own invention, he can have another made, and the brass and cost of workmanship is the only loss. It seems this man had been in Brazil, and last in France, but how long at either place, or when he left, is not stated. He engaged his passage in what the defendants call the Emigrant Line, and took a receipt. We are not aware of any rule or principle of law which requires or admits the application of different rules of evidence or principles of conduct, in the ordinary transactions of life, to one class of men, or men of one nation, from what are applied to all men in such situations. If a foreigner should sue for goods sold and delivered, he must prove the sale and delivery, as if he had been a native; and in case of any contract made by him, he must prove it by legal testimony. Now if a merchant or other person send a box or boxes of goods by a carrier, he must prove the contract and value by some other testimony than his own oath. *Clark* v. *Spence,* (10 *Watts* 336), states this expressly. In that case it was agreed that the party may by his own oath prove the clothes, and even personal ornaments contained in a trunk containing the clothing of a passenger. Perhaps where those clothes are set at a very high value, or the ornaments are very numerous and estimated at high prices, it may be found necessary to require some proof that the party alleging the loss actually possessed such articles of such price when at home, and neither sold them or left them at home, or the place of his or her last residence. If an emigrant must bring proof of a parol contract before he can recover on it, we do not see why he can or should recover on the severest legal liability known to the law, without the ordinary legal proof that he possessed certain articles, and their value, and that he delivered articles of such value to the carrier.

If the plaintiff must in every other instance prove his case by legal evidence, we see no reason for extending the exceptions from necessity beyond those already established. Whether going on a trading journey or one of business, or travelling to the west with intention of settling permanently, the party must, to recover against a carrier, prove he had the articles of merchandise, tools of a trade, or other goods or chattels, not excepted by decided cases, and the value of them; and this whether he has always resided in this country or lately come from a foreign nation. And it is time that it was generally known and understood that if two parties make a contract and reduce it to writing, it binds both

parties, at least so far as a construction has been put on such contracts by the tribunals of justice.

Judgment reversed, and a *venire de novo* awarded.