9w 87
188 178

9 W     87
203    ¹528

# Atwood *against* The Reliance Transportation Company.

The common law responsibility of a carrier may be abridged by the special terms of the acceptance of the goods; but these are exceptions which leave the common law rule in force as to all beside, and, it being the business of the carrier to bring his case distinctly within them, they are to be strictly interpreted.

Excepted "dangers of the navigation" of a public canal, are such as are incident to it when the trip is made in conformity to the public regulations, of which the carrier is bound to take notice; consequently damage from bilging in a lock which was entered in contravention of the rules, must be compensated by him.

ERROR to the district court of *Allegheny* county.

This was an action against the Reliance Transportation Company as common carriers on the Pennsylvania canal. The goods, consisting of teas, dry goods, hardware, and shoes, were received at Philadelphia the 22d of April 1836, on board the defendant's tow-boat, the Columbia, on terms of delivery in sixteen days to the plaintiff in Pittsburg, "in good order, the dangers of the navigation, fire, leakage, and all other unavoidable accidents, excepted." The boat proceeded on her trip and arrived at Harrisburg in the morning of the 4th of May, where she was detained while workmen were employed in repairing a breach in one of the locks. The water was drawn off above, and was rapidly subsiding in the level where she lay; when, in obedience to the regulation established by the canal commissioners pursuant to the statute, the lock keeper refused, as he testified, to let her lie in the chamber of the lower lock, and pointed out a place where she could lie in safety: notwithstanding which, she went into the lock at 11 o'clock in the forenoon and bilged in the night by settling and straining on the bottom, which was counter-arched and without a floor; by reason of which the cargo was damaged by water. The defendants gave evidence to show that the boat's entrance had not been forbidden by the lock keeper; that she was tight, staunch and strong; that she was well manned and commanded; that the locks were generally safer in grounding by settling, than the bed of the canal; and that boat masters usually sought them as preferable berths when grounding was apprehended. The judge charged that "a common carrier may limit his responsibility by notices or agreements, and that if the captain was not culpably ignorant of any fact in regard to the lock; not deficient in prudence, care and judgment; not warned of his danger; the case might be considered to come fairly within the exceptions named in the contract." The jury found for the defendants and the plaintiff brought a writ of error.

[Atwood v. The Reliance Transportation Company.]

*Findley*, in support of his exceptions, cited 19 *Wend.* 234; 5 *Rawle* 189, and 4 *Whart.* 204.

*Forward*, *contra*, relied on *Story on Bailm.*, *passim*; 5 *Bingh.* 217; 4 *Bingh.* 218; 5 *Rawle* 189.

The opinion of the court was delivered by

GIBSON, C. J.—The maxim that any one may dispense with a rule provided for his exclusive benefit, is not without its exceptions; and notwithstanding the unfortunate direction given to the decisions at an early day, it is still almost susceptible of a doubt whether an agreement to lessen the common law measure of a carrier's responsibility, like an agreement to forego a fee-simple tenant's right of alienation, or a mortgagor's right of redemption, is not void by the policy of the law. That the bailor is left as much at another's mercy, by an agreement like the present, as a borrower would be by an agreement to turn his mortgage into a conditional sale, is entirely evident from the fact that the carrier has the exclusive custody of the goods; and that to convict him of negligence in his function, would be as impracticable as to convict him of connivance at robbery, against which the common law rule of his responsibility was intended more especially to guard. From his servants, who are usually the only persons that can speak of the matter, it would be idle to expect testimony to implicate themselves; and the owner can seldom have any other account of his property than what they may choose to give him. Such a state of things is not to be encouraged; and though it is perhaps too late to say that a carrier may not accept his charge in special terms, it is not too late to say that the policy which dictated the rule of the common law, requires that exceptions to it be strictly interpreted, and that it is his duty to bring his case strictly within them. What, then, is the effect of an acceptance on terms of safe delivery, the dangers of the navigation, fire, leakage, and all other unavoidable accidents, excepted? The goods were damaged by bilging in a lock; and the question is, whether a loss incurred by resting in a prohibited place, is a loss from an excepted peril of the navigation.

Every contract is supposed to be framed on the basis of the laws; and they are therefore left to regulate those matters for which the parties have not specially provided. Thus a lender implicitly stipulates for legal interest when less is not expressly reserved; and the measure of the defendants' responsibility would have been exactly that which the common law prescribes, had it not been narrowed by a special acceptance. But the terms of this acceptance operate, as I have said, as exceptions which leave the common law rule in force as to all beside. By the terms dangers of the navigation, therefore, the parties meant to mark those perils that are incident to it in a lawful course of it. Holding the carrier to an observance of the laws prescribed for its regulation, the owner has a basis for

[Atwood v. The Reliance Transportation Company.]

an estimate of the risk which he is to take upon himself; but the enhancement of it from a licence to transcend them, would be inappreciable, and, in the absence of express stipulation, such a license is not to be intended. For damage occasioned by inattention to those precautions which are enjoined to prevent collision in passing, the carrier would obviously be liable, though he had substituted others apparently as efficient; and why not for damage by bilging, which would have been avoided had the boat been where it ought, by the law of the canal, to have been? That a man will do what the law commands, is surely a presumption on which a party may reckon in laying the foundations of his contract. Now by declining to assume the risks of the navigation, the carrier compelled the owner of the goods to be his own insurer; but an insurer is not liable to bear a loss from a deviation or change of the risk, and there certainly is a change of it when the transit is not made in subordination to the laws of the navigation. Nor is the consequence of the principle to be evaded by bringing into view the illegal practices of other boatmen. Parties are not to be affected by usages in derogation of laws which bind them; and if the owner of the goods had reason to suppose the law would not be violated, in this instance, by using the locks for a prohibited purpose, why should he bear a risk which was out of the prescribed course of the navigation, even though it might not have been so great as those he would have had to bear within it? The principles of marine insurance, founded as they are in abstract reason and exact justice, may sometimes be fitly applied to a fresh water contract; and I recur to a case of it to show that he who contracts to bear a risk, may insist on having the benefit of all his chances, however remote or inconsiderable. Upon the principle that the voyage must be prosecuted conformably to the implied terms of the policy, it was held in Middleswood *v.* Blakes, 7 *Term Rep.* 158, that the pursuit of a particular, though customary track by direction of the owners, was a deviation because the insured was tacitly entitled to the benefit of the captain's choice at the usual point of divergence; and yet the owners may have been in fact, more competent to choose than he. It is an implied but cardinal condition of marine insurance, therefore, that no risk be introduced but precisely that which the insurer contemplated; and that it has a place in contracts of inland navigation, is shown by Hand *v.* Baynes, 4 *Whart.* 204. In that case, the hides had been received at Philadelphia, as it was expressed in the bill of lading, "on board Hand's line via the Chesapeake and Delaware Canal," to be delivered to the consignee in Baltimore, "the dangers of the navigation, fire, leakage and breakage, excepted." The sloop was not permitted to pass through the canal, which chanced to be shut when she arrived at the entrance of it; and the captain, being told that the repairs then in progress would not be finished for a month, proceeded to make the voyage coastwise, and lost his vessel with her cargo in a gale at sea, for which his owners

were held liable on the ground that it was his duty to lie by or return, and that the goods, therefore, were not lost in the navigation contemplated by the contract. Yet the sloop, like the towboat in this instance, was tight, staunch, and competent to the voyage attempted. What avails it, then, that in a scarcity of water, the chamber of a lock may ordinarily be a safer berth than the bed of the canal, or that boat masters may have surreptitiously used it as such; or that so to have used it, in this instance, evinced no want of prudence or skill? The master was incompetent to choose it, because the owner of the goods had chosen differently. Nor is it material to inquire whether the boat had been warned off by the lock keeper. The use of the lock for the purpose to which the master applied it, was interdicted by the law, of which he was bound to take notice; and in these respects the direction was erroneous.

Judgment reversed, and a *venire de novo* awarded.