## STEELE & BURGESS *vs.* TOWNSEND.

[ACTION BY COMMON CARRIER FOR FREIGHT—RECOUPMENT OF DAMAGE TO GOODS.]

1. *Liability of common carrier for negligence.*—A common carrier cannot limit his common-law liability by any general notice, but may so limit it by a special contract with the shipper; and a bill of lading, given by the carrier on the receipt of the goods, and accepted by the shipper. is a special contract within the meaning of this rule; yet such special contract cannot be pleaded by the carrier, as an exemption from liability for any loss or damage resulting from his own negligence.

2. *Relevancy of evidence on question of negligence by common carrier.*—In an action against a common carrier, to recover damages for injuries to goods shipped by sea, (or where the same matter is relied on as a defense against an action by him to recover freight,) the fact that similar goods, shipped by sea to the port of delivery, usually arrived safe and uninjured, would be admissible evidence against him, as a circumstance tending to show that any damage by breakage was the result of negligence on his part; and *e converso*, the fact that such goods usually arrived in a damaged and broken condition, is admissible evidence for him, as tending to show that the breakage was not the result of negligence on his part. (Explaining and limiting first head-note in *O'Grady v. Julian*, 34 Ala. 88.)

3. *Burden of proof on question of negligence by common carrier.*—Where the bill of lading contains an express stipulation, that the carrier is "not accountable for rust or breakage," proof of injury to the goods by breakage nevertheless makes out a *prima-facie* case o' negligence against him; and the *onus* is then on him to show the exercise of due care and vigilance on his part to prevent the injury; unless the nature of the injury, or of the goods, of itself furnishes evidence that due care and diligence could not have prevented the injury.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by the appellee, to recover of the appellants $82 32, "for freight, primage and average, due from said defendants to plaintiff, upon, for, and in respect of the conveyance of divers goods, merchandize and chattels, on board the plaintiff's schooner *R. W. Tull*, from the port of Philadelphia to the port of Mobile ;" and the complaint also contained a count for work and labor, and a count on an account stated. The defendants pleaded, "in short by consent, payment, set-off, and non-assumpsit." On the trial, as the bill of exceptions shows, the plaintiff read in evidence the bills of lading for the goods, which contained a clause in these words, "Not accountable for rust or breakage ;" and proved the delivery of the goods to the defendants in Mobile, and the value of the freight. The goods consisted of stoves, kettles, pots, pans, &c. "The plaintiff introduced evidence, also, that the goods were well stowed, and were not broken or damaged in discharging them, and that proper care and skill were employed in discharging them from the vessel ; also, that his witnesses had never seen like goods better stowed. The defendants' evidence tended to show, that the cast-iron ware, stoves, &c., were much broken upon the vessel, and upon the wharf, and before the delivery to the defendants' drays ; that the breakage of the goods was equal to the amount of the freight claimed ; and that some of the breakage, as appeared by the fractures, was very recent, and seemed as if it had been done within an hour. One witness, who had much experience in the business of receiving like wares shipped from northern ports, testified, that he had never seen a shipment of stoves so badly broken ; while other witnesses, also experienced, testified, that there was not more breakage than usual in such shipments. The plaintiff offered evidence tending to show, that shipments of cast-iron and hollow-ware, especially stoves, coming to Mobile upon vessels by sea, were usually in a damaged and broken condition on their arrival. The defendants objected to this evidence, and excepted to its admission against their objection. The plaintiff offered evidence, also, without

objection, to show that stoves were especially brittle, and liable to damage and breakage; and it was also proved, that such wares, unless carefully handled, were liable to break, no matter how well stowed. It was in evidence, also, that the plaintiff was master of the vessel, a common carrier, on which the goods were shipped; but there was no evidence to show any special contract for the carriage of the goods, other than the bills of lading, which were admitted to be genuine."

"The court thereupon charged the jury, (among other things,) that if the goods mentioned in the bills of lading were of a brittle nature, and very liable to rust and breakage in the transportation and handling, then the exception in the bills of lading, 'not accountable for rust or breakage,' was, to some extent, valid in favor of the plaintiff: that, notwithstanding that clause in the bills of lading, the plaintiff was bound to use the highest degree of diligence, according to the nature of the goods, to avoid damage to them; but, that if, after using such diligence, and taking the greatest care, they were broken without any neglect or want of care on his part, then, under his bills of lading, he would not be liable in damage for such breakage, nor would the same be a defense or bar to his right to recover freight.

"The defendants excepted to this charge, and then asked the court to charge the jury—'1st, that if there was no other evidence of a special contract or agreement, than the words 'not accountable for rust or breakage' in the bills of lading, these words did not show such a special contract between the carrier and the shipper as would limit the responsibility of the former as to breakage; 2d, that if the goods were in good order when received by the plaintiff in Philadelphia, and in bad order when landed in Mobile, the plaintiff could only discharge himself by showing that he had not been negligent, and had taken that care which the nature of the articles required, from the time he received them in good order in Philadelphia, until he delivered them to the defendants in Mobile.' The court refused to give these charges as asked, and the defendants excepted to their

refusal ; but the court did give the second charge, after inserting the word *unusually* before the words *bad order ; to* which qualification the defendant also excepted:"

The several rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

R. B. ARMISTEAD, for appellants.—1. The circuit court erred in the admission of the evidence excepted to. *O'Grady v. Julian*, 34 Ala. 88 : *Gilmer v. City Council*, 26 Ala. 665 ; *Hubbard v. Railroad Co.*, 39 Maine, 506, and cases cited.

2. It has been generally held in this country, that a common carrier cannot limit his responsibility by a general notice, but may so limit it by a special contract.—1 Smith's Leading Cases, 325–6 ; 1 Parsons on Maritime Law, 177 ; 19 Wendell, 234 ; 9 Watts, 87 ; 5 Rawle, 179 ; 6 How. U. S. 344–82 ; 2 Kelly, 349 ; 16 B. Monroe, 643 ; 2 Kent's Com. (8th ed.) 820, and note. The insertion of a particular clause in the bill of lading, which is the act of the carrier himself, does not amount to a special contract, unless the assent of the shipper is clearly shown.—1 Newberry's Adm. 464 ; 6 Johns. 170–80 ; 6 How. 382.

3. If the carrier received the goods in good order, and delivered them in bad order, the *onus* was on him to excuse himself by proof of due care and diligence.—1 Newberry's Adm. 464, 505 ; 9 Rich. 201 ; 12 Howard, 272–80.

A. R. MANNING, *contra.*—1. A common carrier may, by special contract with the shipper, limit his responsibility: ; and the bill of lading is the proper evidence of such special contract.—Angell on Carriers, §§ 220, 221, 223, 225, 233, 159, 166 ; Edwards on Bailments, 468 ; 6 How. U. S. 382 ; 1 Kernan, 486, 491–2 ; 4 Sandf. 141 ; 4 Taunton, 126 ; 6 Porter, 131 ; 31 Ala. 506.

2. It being shown that the damage to the goods resulted from the cause specially excepted, the *onus* is on the shipper to show negligence on the part of the carrier.—Angell on Carriers, §§ 61, 276 ; Story on Bailments, § 573 ; 5 B. &

Cr. 326 ; 11 Metcalf, 461 ; 28 Ala. 412 ; 34 Ala. 174.

3. The evidence objected to was relevant and proper. *Donnell v. Jones*, 17 Ala. 695 ; *Ingram v. Lawson*, 37 Eng. Com. L. 350.

R. W. WALKER, J.—1. Whatever doubts may at one time have been entertained on the subject, it is now well settled, that, although a common carrier cannot limit the liability which the common law devolves on him by any general notice, he may do so by special contract with the shipper.—*Dorr v. N. J. Steam Nav. Co.*, 1 Kernan, 490–91; *S. C.*, 4 Sandf. Sup. Ct. R. 141–2 ; *N. J. Steam Nav. Co. v. Merchants' Bank*, 6 Howard, 382 ; Ang. Carriers, §§ 220, 221, 225, 233 ; 1 Parsons on Contr. 203–4. And it seems to be considered, that a bill of lading, given by the carrier on receipt of the goods, and accepted by the shipper, is a special contract between the parties, within the meaning of this rule.—*Dorr v. N. J. Steam Nav. Co.*, 1 Kernan, 486, 491; Edwards on Bailments, 468; *Swindler v. Hilliard*, 2 Richardson, 303; Story on Bailments, § 550. Yet such contract, limiting his common-law responsibility, cannot be pleaded by the carrier as an exemption for any loss or damage resulting from his own negligence.—*N. J. Steam Nav. Co. v. Merchants' Bank*, 6 Howard, 144; *Dorr v. Steam Nav. Co.*, 4 Sandf. 136 ; *Swindler v. Hilliard*, 2 Rich. L. 286; *Baker v. Brinson*, 9 Rich. L. 201 ; *Davidson v. Graham*, 2 Ohio St. R. 131 ; *Graham v. Davis*, 4 Ohio St. R. 362 ; *Merriman v. Brig Mary Queen*, 1 Newb. Adm. R. 464; 1 Parsons' Mar. L. 179, *note*.

2. As the exception contained in the contract did not have the effect of relieving the plaintiff from liability for any " breakage" which was the result of his negligence, it follows, that evidence tending to show that the breakage complained of was not the result of the plaintiff's negligence, was admissible in his behalf ; and we hold, that, for this purpose, it was competent for the plaintiff to show, that articles similar to those specified in the bill of lading, coming to Mobile upon vessels by sea, were usually in a

damaged and broken condition on their arrival. If such articles, when shipped by sea, usually arrived uninjured, this would be a circumstance tending to show that the "breakage," when any did occur, was the result of negligence on the part of the carrier. The contrary proof would have a contrary tendency.—See *Ingram v. Lawson*, 37 Eng. Com. Law. R. 350–1 ; *Donnell v. Jones*, 17 Ala. 690, 695.

The decision of this court in *O'Grady v. Julian*, (34 Ala. 88,) is relied on by the counsel for appellant, as in conflict with the opinion here expressed. It is possible that, in the case just cited, the court may have placed an improper construction upon the language of the bill of exceptions. But the evidence which was there held to be inadmissible, was understood by the court as relating to the usual profits made by *particular* establishments in the neighborhood, and not as referring to the average *per-centage* of profit realized by similar establishments in the neighborhood. The decision was intended to apply, and must be confined, to cases in which it is proposed to prove the profits of particular establishments—that is, to take individual instances, and prove the usual profits of each,—the effect of permitting which would be, to nullify the issues indefinitely.

3. The difficult point in the case arises upon the charge which was asked by the defendants, and which the court refused to give.

In reference to special agreements, limiting the carrier's responsibility, Nelson, J., in delivering the opinion in *New Jersey Steam Nav. Co. v. Merchants' Bank*, (6 Howard, U. S. 384,) uses this language : "The owner of goods, by entering into the contract, virtually agrees that, in respect to the particular transaction, the carrier is not regarded as in the exercise of his public employment, but as a private person who incurs no responsibility beyond that of a bailee for hire, and answerable only for misconduct or negligence."—See, also, 4 Sandf. Sup. C. R. 145 ; 1 Kernan, 493. And it has been held on several occasions, that, although a special contract, qualifying a carrier's responsibility, does not exempt him from liability for loss resulting from his

negligence; yet that, in such case, the burden of proving negligence is on the shipper.—Authorities *supra; Clark v. Barnwell*, 12 Howard, U. S. 280 ; *Hunt v. The Cleaveland*, 6 McLean, 26 ; *S. C.*, 1 Newb. 222–3; *Brig Mary Queen*, 1 Newb. 464; see 1 Parsons' Mar. Law, 150–1 ; Ang. Carr. §§ 61, 276.

On the other hand, and in cases in which the question received the most thorough consideration, it has been decided, that where there is a special contract, limiting the carrier's responsibility, the *onus* of showing, not only that the cause of the loss was within the terms of the exception, but also that there was no negligence, is on the carrier.— *Swindler v. Hilliard*, 2 Rich. L. R. 286 ; *Baker v. Brinson*, 9 Rich. L. 201; *Davidson v. Graham*, 2 Ohio St. R. 131 ; *Graham v. Davis*, 4 Ohio St. R. 362; *Camden & Amboy R. R. Co. v. Baldauf*, 16 Penns. St. R. 67 ; 2 Greenl. Ev. § 219.

Without adopting this rule in the terms in which it is here stated, we think it is so far true in the present case, that an injury by "breakage" to the articles shipped is not brought within the terms of the exception, unless it is also shown that the " breakage" was not the result of the negligence of the carrier.    In other words, the exception includes only such breakage as care and diligence could not prevent; and the injury is not within the exception, until it is shown that it occurred notwithstanding the exercise of such care and diligence.    It is not strictly accurate to say, that the *onus* is on the carrier to show, not only that the cause of loss was within the exception, but also that he exercised due care.    The correct view is, that the loss is not brought within the exception, unless it appears to have occurred without negligence on the part of the carrier; and, as it is for the carrier to bring himself within the exception, he must make at least a *prima-facie* showing that the injury was not caused by his neglect.

It is a mistake to suppose that, by the insertion of such an exception as is found in this bill of lading, the character of the employment is changed.    The party receiving the

goods still remains, notwithstanding this feature of the contract, a common carrier: his liability only, to the extent of the exception, is diminished. " In all things else, the very same principles apply. Care and diligence are still elements of the contract, and 'strict proof' is properly required, before any exemption may be claimed."—9 Rich. 203.

In most cases of bailment, the bailee is chargeable, not by the delivery of the goods, but by reason of negligence. Hence, in the case of ordinary bailments, the general rule is, that to hold the bailee responsible, negligence must be alleged and proved; though some courts have considered that the bailee should be held to proof of the facts and circumstances under which the loss occurred.—*Clarke v. Spence*, 10 Watts' R. 335; *Logan v. Mathews*, 6 Barr, 417; *Swindler v. Hilliard*, 2 Rich L. 305-6. But in relation to common carriers, the rule is, that, in all cases of loss, the *onus probandi* is on the carrier to exempt himself from liability; for, *prima facie*, the law imposes the obligation of safety upon him. Consequently, the owner is bound to prove no more than that the goods were delivered to the carrier, and that the latter had not delivered them to the consignee. These facts constitute *prima-facie* evidence of negligence or misconduct.—Angell Carr. § 202; Story Bailm. § 529.

By the common law, the carrier is responsible for all losses, except such as result from the act of God, or the public enemy. Hence, his liability is not confined to such losses as are the consequences of his own negligence, or want of skill. He is liable for losses by accident, mistake, and numerous unavoidable occurrences, not falling under the head of acts of God or the public enemy, and against which it is not within the reach of human vigilance or foresight to provide. For losses occasioned by the wrongful acts of third persons, by accidental fires, by robbery, or by the violence of mobs, which neither the carrier nor his agents can resist, or by any vigilance avoid, he is responsible.—1 Smith's L. C. 315; 2 Ohio St. R. 137. The lia-

Steele & Burgess v. Townsend.

bilities of a common carrier are thus distinguished into two classes : the one, a liability for losses by neglect, which is the liability of a bailee; the other, a liability for losses by accident, or other unavoidable occurrence, which is the liability of an insurer. In *Riley v. Horne*, (5 Bing. R. 217,) Best, C. J., uses this language : " When goods are delivered to a carrier, they are usually no longer under the eye of the owner; he seldom follows, or sends any servant with them, to the place of their destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the carrier's servants; and they, knowing that they could not be contradicted, would excuse their masters and themselves. To give due security to property, the law has therefore added to that responsibility of a carrier which immediately arises out of his contract to carry for a reward—namely, that of taking *all reasonable care of it*—the responsibility of *an insurer*. From his liability as an insurer, the carrier is only to be relieved by two things, both so well known to all the country when they happen, that no person would be so rash as to attempt to prove that they had happened when they had not; namely, the act of God, and of the king's enemies."

On grounds of public policy, the courts have manifested a disposition to construe any new exceptions to the liability of a common carrier, strictly against him.—*Atwood v. Transportation Company*, 9 Watts, 87. Without the exception, the carrier would be liable as an insurer, for a loss from the specified cause ; and the only legitimate effect of the exception is, to relieve the carrier from this extraordinary responsibility for a loss which could not have been prevented by proper care and diligence on his part. When, therefore, a carrier, as in this case, provides against accountability for "rust or breakage," the proper construction of the exception is, that the carrier is not to be held liable as an insurer for "rust or breakage" which occurs without negligence :

on his part; but that he remains, as before, responsible for any injury of the kind mentioned, if caused by his failure to exercise the degree of care which the law demands of every common carrier, in respect of the goods committed to him. The making of such exception does not change the character of the employment, or the rules of evidence before applicable to the subject. Hence, a *prima-facie* case of negligence is made out against the carrier, by showing that the goods were delivered to him, and that he has either not delivered them at all, or has delivered them in an injured condition.

Where a carrier seeks to bring a loss within the common-law exception of "an act of God," he cannot throw upon the employer the burden of proving or inferring negligence or defective means in the carrier, until he has shown the intervention of such an extraordinary, violent and destructive agent, as by its very nature raises a presumption that no human means could resist its effect.—1 Smith's L. C. (5th Am. ed.) 318 ; *Coosa R. Co. v. Barclay*, 30 Ala. 128–9 ; *Steele v. McTyer*, 31 Ala. 676. "The true view is, not that the carrier discharges his liability by showing an act of God, and is then responsible, as an ordinary agent, for negligence ; but that the intervention of negligence breaks the carrier's line of defense, by showing that the injury or loss was not directly caused by the act of God, or, more correctly speaking, was not the act of God."—1 Smith's L. C. 319.

In like manner, the exception of "perils of the sea," and "dangers of the river," means such as cannot be avoided by the exercise of that discretion and care, which the law requires of common carriers ; and to ascertain whether a loss falls within the exception, it must be inquired, whether the accident could have been prevented by the exercise of proper foresight and diligence.—1 Smith's L. C. 316 ; *Williams v. Branson*, 1 Murphy, 417 ; *Marsh & Houren v. Blithe*, 1 N. & McC. 170 ; *Jones v. Pitcher*, 3 St. & P. 136, 171. Thus, where goods were received on board a steamboat, and the bill of lading contained an exception

of "dangers of the river ;" and the loss was occasioned by the boat's striking on a sunken rock ; it was held incumbent on the carrier to prove that due diligence and proper skill were used to avoid the accident.—*Whiteside v. Russell,* 8 W. & S. 44.

The same principle must apply to the present exception. The proof of injury makes a *prima-facie* case of negligence against the carrier ; and he does not bring the injury within the exception, until he shows the exercise of due vigilance on his part to prevent the injury ; unless, indeed, the nature of the injury, or of the property, be such as to furnish, of itself, evidence that due care and diligence could not have prevented the injury.

There is no hardship in such a rule, and many strong reasons unite to commend it to our approval. It is of the utmost importance to the commerce of the country, that carriers should be held to a strict accountability. On this subject, we concur in the remark of Chief-Justice Gibson, that, "though it is, perhaps, too late to say, that a carrier may not accept his charge in special terms, it is not too late to say, that the policy which dictated the rule of the common law requires that exceptions to it be strictly interpreted, and that it is his duty to bring his case strictly within them."—9 Watts, 87. This is especially so in reference to exceptions inserted in bills of lading. Goods are commonly sent by the owner to the carrier's place of business, where they are received, and the bill of lading made out by the carrier, or his clerk. It is often not seen by the owner, until it is too late to insist on a change in the terms. These considerations have induced one eminent judge to say, that the better rule, perhaps, would be to treat all such provisions in bills of lading as void, unless inserted by the express consent of the employer.—Black, C. J., in *Chouteaux v. Leach,* 18 Penn. 233.

One result of the introduction of steamboats and railroads is, that common carriers have, to a great extent, taken exclusive possession of the public thoroughfares of the country, and have it in their power to impose their own terms

17

upon the owners of goods, who, indeed, have no choice but to employ them. The owner accepts the conditional bill of lading, because he cannot well help it. He must have his goods carried, and he sees that the carrier will refuse to take them, unless the prescribed terms are accepted. The owner seldom accompanies his property, and, in case of loss or injury, however gross the negligence may be, is unable to prove it, without relying upon the servants of the carrier,—the very persons, generally, by whose negligence (if there was negligence) the goods have been lost; whose feelings, wishes, and interests, are all against the owner, and who are, as a general rule, only too ready to exculpate themselves and their employer. Of the manner of the loss, the owner is, generally, entirely ignorant, while the carrier and his servants may be reasonably supposed to be fully advised in regard to it; and "that is a sound rule, which devolves the *onus* on him who best knows what the facts are."

The result of what has been said is, that if the goods were in good order when received by the plaintiff in Philadelphia, and in bad order from "breakage" when delivered in Mobile, it devolved upon the carrier to show that proper diligence and skill were exercised to prevent the injury; unless, as before remarked, it appears that the nature of the injury, or of the property, is such as to show, of itself, that due care and diligence could not have prevented the injury. The charge asked should have been given.

Judgment reversed, and cause remanded.