### YORK COMPANY v. CENTRAL RAILROAD.

1. The common-law liability of a common carrier for the safe carriage of goods may be limited and qualified by special *contract* with the owner; provided such special contract do not attempt to cover losses by negligence or misconduct.

 Thus, where a contract for the transportation of *cotton* from Memphis to Boston was in the form of a bill of lading containing a clause exempting the carrier from liability for losses by *fire*, and the cotton was destroyed by fire, the exemption was held sufficient to protect the carrier, the fire not having been occasioned by any want of due care on his part.

2. Where a deposition is taken upon a commission, the general rule is that all objections to it of a formal character, and such as might have been obviated if urged on the examination of the witness, must be raised at such examination, or upon motion to suppress the deposition. It is too late to raise such objections for the first time at the trial.

 Thus, where a copy of a bill of lading was annexed to the answer of a witness examined on a commission, and no objection to the copy was taken at the examination or by motion to suppress afterwards, it was held that the objection that the original was not produced or its loss shown came too late at the trial.

TROUT & SON shipped at Memphis, on the Mississippi, a large quantity of cotton, on board a steamer belonging to the Illinois Central Railroad Company, common carriers; which by the terms of the bill of lading was to be delivered at Boston, Massachusetts, the consignees paying $4.75 per bale, "*fire* and the unavoidable dangers of the river *only excepted.*" The bill of lading which referred to the cotton as shipped by "*Trout & Son*" was signed in four; two copies being given to Trout & Son, of which they retained one, for-

warding the other to the York Company in New England, for whom the cotton was intended. In the course of the transit the cotton was destroyed by fire.

The company now sued the carriers in the Circuit Court of Illinois for damages. Trout was examined on *a commission*, and having stated that his firm were but agents of the York Company and that the shipment was made on *its* account as owner, proved the fact and contract of shipment (which last he stated was in the form of a bill of lading) and the value of the cotton. But he did not produce on his examination in chief any original or copy of the bill itself.

The carriers, who wished to rest their case on the fire clause in the bill, inquired of him on cross-interrogatories whether one or more of the bills had not been delivered to him, and directed him, if one had, to annex " the same or a certified and proved copy to his deposition, and to let the same be properly *identified by the commissioner in his return.*" The witness answering that one of the bills had been delivered to him annexed " a true copy of it from his books." The fire clause appeared in it; though the witness stated that the cotton was shipped on the steamer before the bills were signed; that he had not examined the bills; that " his attention was not called to the fire clause," and that his firm had no authority to ship for their principals with that exemption.

*On the trial,* the plaintiff *not having made objection during the execution of the commission nor by motion to suppress,* objected to the reading of the answers to the cross-interrogatories which showed a *copy* of the bill; the ground of the objection being that the contract was shown to be in writing, and that no foundation had been laid for secondary evidence either by notice to produce the original bill or by evidence of its loss. But the court overruled the objection.

The defendant had judgment. On error four objections were made to it here.

1. Because it was doubtful whether as common carriers the defendants could exempt themselves from risks by fire.

2. Because if they could, still that Trout & Son, who were really but agents of the York Company, could not give their assent to such exemption.

3. Because if they had given such assent no consideration had been paid by the company, in a reduced rate of fare or otherwise, for this restriction of the carrier's common-law obligation.

4. Because the *copy* of the bill of lading, in the absence of notice to produce the original or of proof of its loss, was improperly allowed to be read.

*Mr. Hitchcock, for the owners of the cotton:* The law imposes upon the carrier a definite and absolute duty, and he ought to be under an incapacity to contract in derogation of that duty. Such contracts are usually an empty form of words, imposed by a party who has no right to propose them, upon another who has no power to repel them, and who rarely, in any sense, assents to them.

The reasoning of Judge Cowen, in the New York cases of *Cole* v. *Goodwin*[*] and *Gould* v. *Hill*,[†] and of Judge Nesbitt, in the Georgia case of *Fish* v. *Chapman*,[‡] is more satisfactory upon principle and authority than that of later cases, establishing a somewhat different rule. The late Mr. H. B. Wallace, the American annotator of Smith's Leading Cases, in the last edition of that work published before his death, in 1852, regarded the question whether a carrier, when charged upon his common-law responsibility, could discharge himself from it by showing a special contract, assented to by the owner, as one then still open. Some decisions since then tend perhaps to a different view; though many of the best judges and text-writers regret their tendency, and hold them to strict limits.

1. It is certainly settled that any kind of *notice*, though brought home to the shipper, will not exonerate the carrier from the liabilities which the law annexes to his employment; though it may perhaps be too late to assert confi-

---

[*] 19 Wendell, 251.   [†] 2 Hill, 623.   [‡] 2 Kelly, 349.

dently that if the owner expressly assents to such notice and agrees to be bound by it, and there is sufficient consideration for it, it shall still be without effect.\*

2. But it is shown that Trout & Son, though they had authority to ship, had no authority to agree to any restriction on the carriers' common liability. Their authority to forward was certainly, of itself, not an authority to make an unusual and special contract, restricting the liability .in a most important feature. The contract, made without the assent of one party to it, differs in no respect, then, from a general notice brought home to the shipper, which, as we have said already, is universally held inefficacious.

3. Even, however, had Trout & Son been authorized thus 'to contract, the burden lies upon the carrier to prove a consideration for the special exemption from a common-law liability, and without such consideration the contract has no obligation. In all the cases in which effect has been given to these special contracts with carriers, by which their common-law liability was limited, this essential requisite of a contract has been found. Thus, in *The New Jersey Steam Navigation Co.* v. *Merchants' Bank,*† in this court, a full consideration is expressed in the instrument, which is, moreover, signed by the parties and under seal. So in *The Illinois Central Railroad Company* v. *Morrison,*‡ a full consideration in the reduction of the rate of freight was proven, and the contract was also signed and sealed. So in *Kimball* v. *The Rutland Railway,*§ a similar consideration was shown, and also the assent of the plaintiff in express terms.

4. The rule that notice to produce, or the loss of, the original, should be shown before parol evidence of the contents of a written instrument is admissible, will hardly, in its general force, be questioned. This case should present no exception. Will it be said that the copy was first objected to on the trial? This is true. But from the nature of the case, it could not have been properly objected to at any

---

\* See 1 Smith's Leading Cases, 6th American edition, pp. 396–406; and at p. 387 an able opinion by Thompson, C. J., of Pennsylvania, to this effect.
   † 6 Howard, 344.     ‡ 19 Illinois, 136.     § 26 Vermont, 252.

other time. The objection was a substantial and not a formal one; and such objections are always heard at the trial. There is no rule or practice of the court requiring any other than formal objections to be stated in writing before the cause is called for trial. If a motion to suppress had been urged before the trial, it would have been said, in reply, that the testimony might be made competent before it would be offered, by showing a notice to produce the original, or that it was unattainable, by destruction or otherwise. Could the court assume, for the purpose of suppressing a deposition, that the requisite proof would not be made to render it competent?

*Mr. Tracy, contra.*

Mr. Justice FIELD delivered the opinion of the court.

The right of a common carrier to limit his responsibility by special contract has long been the settled law in England. It was the subject of frequent adjudication in her courts, and had there ceased to be a controverted point before the passage of the Carrier's Act of 1830.

In this country, it was at one time a subject of much controversy whether any such limitation could be permitted. It was insisted that, exercising a public employment, the carrier owed duties at common law, from which public policy demanded that he should not be discharged even by express agreement with the owner of the goods delivered to him for transportation. This was the ground taken by Mr. Justice Cowen, of the Supreme Court of New York, in *Cole* v. *Goodwin;** and, although what that learned judge said on this point was mere *obiter*, as the question presented was not upon the effect of a special agreement, but of a general notice, it appears to have been adopted by a majority of the court in the subsequent case of *Gould* v. *Hill.*† But from this doctrine that court has since receded; and, in a recent decision, the Court of Appeals of that State has affirmed

---

\* 19 Wendell, 251. † 2 Hill, 623.

the right of the carrier to stipulate for a limitation of his responsibility.* The same rule prevails in Pennsylvania; it has been asserted in Ohio and in Illinois, and, it is believed, in a majority of the other States; and in *The New Jersey Steam Navigation Co.* v. *The Merchants' Bank*, it received the sanction of this court.†

Nor do we perceive any good reason, on principle, why parties should not be permitted to contract for a limited responsibility. The transaction concerns them only; it involves simply rights of property; and the public can have no interest in requiring the responsibility of insurance to accompany the service of transportation in face of a special agreement for its relinquishment. By the special agreement the carrier becomes, with reference to the particular transaction, an ordinary bailee and private carrier for hire.

The law prescribes the duties and responsibilities of the common carrier. He exercises, in one sense, a public employment, and has duties to the public to perform. Though he may limit his services to the carriage of particular kinds of goods, and may prescribe regulations to protect himself against imposition and fraud, and fix a rate of charges proportionate to the magnitude of the risks he may have to encounter, he can make no discrimination between persons, or vary his charges from their condition or character. He is bound to accept all goods offered within the course of his employment, and is liable to an action in case of refusal. He is chargeable for all losses except such as may be occasioned by the act of God or the public enemy. He insures against all accidents which result from human agency, although occurring without any fault or neglect on his part; and he cannot, by any mere act of his own, avoid the respon-

---

* Parsons *v.* Monteath, 13 Barbour, 353; Moore *v.* Evans, 14 Id. 524; Dorr *v.* The New Jersey Steam Navigation Co., 11 New York, 486.

† 6 Howard, 382; Atwood *v.* Delaware Transportation Co., 9 Watts, 89; Camden & Amboy Railroad Co. *v.* Baldauf, 16 Pennsylvania State, 67; Verner *v.* Sweitzer, 32 Id. 208; Kitzmiller *v.* Van Rensselaer, 10 Ohio, 64; Illinois Central R. R. Co. *v.* Morrison, 19 Illinois, 136; The Western Transportation Co. *v.* Newhall, 29 Id. 466.

sibility which the law thus imposes.  He cannot screen himself from liability by any general or special notice, nor can he coerce the owner to yield assent to a limitation of responsibility by making exorbitant charges when such assent is refused.

The owner of the goods may rely upon this responsibility imposed by the common law, which can only be restricted and qualified when he expressly stipulates for the restriction and qualification.  But when such stipulation is made, and it does not cover losses from negligence or misconduct, we can perceive no just reason for refusing its recognition and enforcement.

We do not understand that the counsel of the plaintiff in error questions that the law is as we have stated it to be.  His positions are that the agents of the plaintiff at Memphis, who made the contract with the Illinois Central Railroad Company, were not authorized to stipulate for any limitation of responsibility on the part of that company; and that no consideration was given for the stipulation made.

The first of these positions is answered by the fact that it nowhere appears that the agents disclosed their agency when contracting for the transportation of the cotton.  So far as the defendant could see, they were themselves the owners.

The second position is answered by the fact, that there is no evidence that a consideration was not given for the stipulation.  The company, probably, had rates of charges proportioned to the risks they assumed from the nature of the goods carried, and the exception of losses by fire must necessarily have affected the compensation demanded.  Be this as it may, the consideration expressed was sufficient to support the entire contract made.

The objection urged to the introduction of the copy of the bill of lading annexed to the deposition of the witness Trout, was properly overruled.  The deposition was taken upon a commission, and in such cases the general rule is, that all objections of a formal character, and such as might have been obviated if urged on the examination of the witness, must be raised at such examination, or upon motion

to suppress the deposition. The rule may be different in some State courts; but this rule is more likely than any other to prevent surprise and secure the ends of justice. There may be cases where the rule should be relaxed, as where the deposition is returned at so brief a period before the trial as to preclude a proper examination, and prevent a motion to suppress. In this case there was no occasion for any such relaxation of the rule, and had the objection been taken before the trial—either at the examination of the witness or on a motion to suppress—to the proof of the copy without producing the original or showing its loss, the opposite party would undoubtedly have secured the production of the original, if in existence, or, if it be lost or destroyed, been prepared to account for its absence.

JUDGMENT AFFIRMED.

[See *infra*, p. 175, *Blackburn* v. *Crawfords*, 4.—REP.]