BENJAMIN E. GREEN, plaintiff in error, vs. SOUTHERN EXPRESS COMPANY, defendant in error.

45 305
95 452
45 305
e124 329

1. In a suit against a common-carrier for the loss of a trunk, there being evidence going to show that the shipper placed a value upon the trunk, at the time of shipment, much less than the amount of the verdict in favor of the plaintiff, a new trial will not be granted at his instance, especially where, on looking to the whole record the verdict is 'not so decidedly against the weight of evidence as to warrant the Court in setting it aside.

2. If a shipper decline to state the value of goods when asked by the carrier, it is questionable whether he can recover of the carrier. (R.)

Common-carriers. Before Judge PARROTT. Whitfield Superior Court. June, 1871.

Benjamin E. Green, "for the use of himself and the Dalton City Company, a corporation, and for the use of Duff Green," sued said company, as a common-carrier, for the loss of a trunk and its contents, to-wit: " many articles of great value, consisting of title papers to valuable tracts of land, promissory notes, and many other valuable papers; and also goods, wares and merchandize of great value, to-wit; of the value of $20,000." No bill of particulars was attached to the petition.

The defendant pleaded the general issue; that plaintiff valued his trunk at $100 when delivered for shipment, and that they had tendered him $100 and interest since the date of the receipt. This tendered sum was deposited in Court.

The main body of the evidence is in the opinion. Green testified that before sending the trunk to the Express office in Montgomery, Alabama, he went to the office and told one, whom he supposed to be agent, that he had a very valuable trunk to be shipped to Dalton, but was short of funds, and could not ship it unless he would charge for it by weight only, and that he agreed to do so. That, about two hours later he took the trunk there, and that person was gone; but, without mentioning the contract, he delivered the

trunk to another agent, who took it, weighed it and handed him the exhibited receipt. In that receipt the value was put at $100, but plaintiff says he did not give any value, nor knew it was put in the receipt, till the trunk was lost.

The person who received the trunk and gave the receipt, swore that he did not put in the $100 at his own instance, but, while he did not remember the case, knew, from the rules and uniform custom of defendant, that he asked the value, and would not have inserted $100 had not plaintiff given that as the value. He explained the company's arrangement for taking care of very valuable freights, and gave an account of a smash up, etc., in which part of the less valuable freight was lost *en route* from Montgomery, and he supposed said trunk was of that lot. He said, had he known it was very valuable he would have saved it, as he did his other very valuable freight. What became of the trunk he did not know.

The Court charged the jury that the first verbal arrangement as to shipping, under the facts stated, was merged in the contract made by accepting the receipt.

The jury found for plaintiff $250 and costs. Plaintiff's counsel moved for a new trial upon the grounds that said charge was wrong and said verdict wrong. A new trial was refused, and that is assigned as error.

D. A. WALKER, by W. H. DABNEY, for plaintiff in error.

McCUTCHEN & SHUMATE, for defendant.

MONTGOMERY, Judge.

1. It appears, by the receipt of the defendants in this case, produced by the plaintiff on the trial, that the latter shipped, at Montgomery, Alabama, a trunk, to be transported to Dalton, Georgia, by the defendants as common-carriers. The receipt bears date November 20, 1865, and states the value of the trunk and contents at $100. The evidence

shows that the trunk was packed in July, 1863, with title-deeds and other papers and jewelry.  The trunk was carried by a third party, after being packed, first to Pendleton, South Carolina, and then to Montgomery, Alabama.  It remained in the latter place some eighteen months, before it was shipped by the plaintiff.  It is true that the plaintiff testifies to very heavy damages, both direct and consequential.  It is to be observed, however, that there is a great want of definiteness upon this point, and, in some cases, a want of knowledge of the value of the articles lost.  He estimates the loss of jewelry at $500, without being able to name any article lost but two gold pencils, one of which he values at $100, without being able to say " whether they were pure gold or alloy."  Conceding it to have been pure gold, it must have been a most extraordinary pencil, both in size and weight, to have been worth that sum, or anything like it.  And yet the witness says " it was a common-sized pencil.'' Again, he says the loss to the Dalton City Company, of which he was the agent, by loss of deeds (all of which, he says, were recorded), and a memorandum-book, containing the names of parties to whom the company had sold lands, was $2,000 ; that he had replaced this memorandum-book, and that the labor was worth $2,000.  How he replaced the book the witness does not say ; it is to be presumed that the records of Whitfield county furnished him with data sufficient for this purpose.  The jury might well have supposed $2,000 a very extravagant charge for such work, with data so complete.  If the records of Whitfield county were destroyed, it does not so appear.  Whether the book, when made, is worth $2,000, or is of any money value, the witness is silent.  The only other item of loss relied on by the witness is that of certain receipts, which were in the trunk, and, by loss of which, he was compelled to pay $6,950 60 a second time to one Alexander, who sued him.  His testimony, on the cross-examination as to this, is as follows : Witness' father paid the money to Alexander, for which said

lost receipts were given; witness was not present when the money was paid, and does not know, of his own knowledge, that it was paid. Witness and witness' father both testified as witnesses on the trial of the suit with Columbus Alexander. Witness could not then, nor can he now, remember the dates or amounts paid by him, nor the dates of the receipts. "The amount mentioned on the direct examination, $6,950 60, is the difference between the amount of the receipts and the amount .that the father of witness could recollect having paid to Alexander." This testimony, as it stands, is vague and uncertain enough to have had very little weight with the jury, especially when taken in connection with the preceding testimony of the witness. How the witness arrived at the exact difference between the amount of the receipts and the amount that his father recollected to have paid Alexander is not very apparent, when he has no recollection of the dates or amounts of the receipts. If he had data by which he arrived at this result, he should have stated them. Nor does he account for the failure to have his father's testimony, who certainly was a very important witness as to this Alexander transaction, conceding that the Express Company could be held responsible for damages so remote. It does not appear that, after the plaintiff packed the trunk in July, 1863, he ever re-opened it and examined its contents, before shipping it on November 20, 1865, although it had, in the meantime, been in the custody of three other persons, and been carried, first to South Carolina, and then to ¦Alabama, in which latter State it had remained stored away some eighteen months. The foregoing states all the salient points in the testimony in favor of the plaintiff. Taking it alone, and assuming that the Express Company are responsible for the full value of the loss *proved*, I do not think we could disturb the verdict.

2. But the plaintiff himself testifies that he was asked, at the time of shipping the trunk, to state its value, which he failed to do. The evidence on the part of the defense

was distinct that he did value it at $100. The jury were the judges of this conflict. If the law of Georgia is to govern, it is very questionable whether his failure to place a value upon the trunk, when requested to do so, did not deprive him of all right of recovery under Revised Code, section 2054, and the decision of this Court, in *Southern Express Company vs. Everett*, 37 Georgia Reports, 688, and *Southern Express Company vs. Newby*, 36 Georgia Reports, 645. For though the company might have agreed to carry the trunk as freight, still they were entitled to know its value, in order to know what degree of care was necessary to its safety. If the contents were as valuable as plaintiff claims, it was a fraud upon them to conceal that value, the more especially as property to that amount is not usually contained in such a receptacle. If the law of Alabama is to control the case, the plaintiff must fail on another principle: *Steel & Burgess vs. Townsend*, 37 Ala., 247. In the view which we have taken of the case, it is wholly immaterial whether the agreement was to ship and *charge* by value or by weight. It is not pretended that there was any agreement that, in case of loss, the company should be liable for more than the value placed upon the trunk by the shipper. If he placed no value upon it, when asked, it would certainly be inequitable to hold them liable for more than the usual value of a trunk and contents. When goods of an extraordinary value are so shipped (as is claimed to be the case here), and the value is withheld from the carrier, although he asked for it, it operates as a fraud upon him, and relieves the carrier from liability : "Story on Bailment, section 565–567. Looking to all the facts of the case, and the law as applicable to those facts, we are satisfied that we are not warranted in interfering with the verdict.

Judgment affirmed.