DILLARD BROS. *v.* L. & N. R. R. Co.

1. RAILROAD COMPANY. *Common carrier. Through freight.* A railroad company as a common carrier, may, upon sufficient consideration, stipulate against liabilities for loss, except such as may grow out of negligence or bad faith, and a lower rate of freight or through transportation beyond the terminus of the road, not conceded except upon those terms, is a sufficient consideration.

2. SAME. *Same. Bill of lading. Stipulations.* The acceptance by the shipper, on the day of shipment, of a bill of lading for his goods containing valid stipulations against liabilities for loss, and retaining it without objection, raises a presumption, in the absence of anything to the contrary, that the shipper knew the contents of the receipt and assented to its terms.

3. BILL OF LADING. *Contract. Negligence. Burden of proof.* Valid exemptions by contract merely reduce the responsibilities of a common carrier without changing his character, and the burden of proof on a question of negligence against which he cannot contract, probably rests on the carrier ; and if he assumes it in the conduct of the trial, and the fact be taken for granted in the charge of the court and conceded by the special instructions asked by the plaintiff, the failure of the charge to say so in so many words is not reversible error.

Dillard Bros. *v.* L. & N. R. R. Co.

4. CHARGE OF THE COURT. *Susceptible of two constructions.* The judge below, after having written out his charge, accepted a correction drawn up by the losing party, which was erroneous if construed in one way, but substantially correct in another sense justified by the residue of the charge, the bill of exceptions not showing how it was to be inserted in the charge. *Held,* not reversible error

---

### FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby. C. W. HEISKELL, J.

HUTCHINSON & TOWNSEND, C. W. METCALF and McKISICK & TURLEY for Dillard Bros.

ESTES & ELLETT for railroad company.

COOPER, J., delivered the opinion of the court.

On the 20th of January, 1872, Dillard Bros. & Coffin delivered to the defendant at Memphis one hundred bales of cotton, to be transported by rail to the city of New York, the defendant's road extending from Memphis to Louisville, Kentucky, constituting the first link in the chain of roads. They received on the same day a bill of lading signed by the defendant's agent, acknowledging the receipt of the cotton for transportation upon certain conditions embodied therein, one of them being that the defendant and the forwarding lines with which it connected should not be liable for loss or damage by fire. Afterward the plaintiff insured the cotton in several insurance companies. Thirty-three bales of the cotton were lost by fire while in transit on the defendant's road. The insurance companies paid the loss, and on the 14th of

19—VOL. 2.

May, 1873, this suit was brought for the use of the insurance companies, to recover damages for the failure to deliver the cotton at New York. The trial resulted in a verdict and judgment in favor of the defendant, and the plaintiff prayed and obtained an appeal in error to this court.

On the trial the plaintiff proved the delivery of the cotton to the defendant at Memphis, the failure of the defendant to deliver the cotton at New York, and the value of the cotton.

The defendant then proved that the bill of lading received by the plaintiff on the day the cotton was delivered, was the bill of lading on which the cotton was shipped, that the plaintiff held it from that time and produced it in court. The defendant introduced evidence tending to show that, on the 23d of January, 1872, while the cotton was in transit on the defendant's road, the car in which were the thirty-three bales in controversy was seen by the employees of the defendant to emit smoke; that it was about the middle of a long train of cars; that the employees of the defendant, after examining the smoking car, detached the cars behind it, and hauled it with the cars in front to the nearest siding, distant about a mile, ran it on the side track, and brought the engine as near to it as they could on the main track, with a view to use the water in the tank, broke into the car, and sought to extinguish the fire and save the cotton; that these efforts were unavailing, and the cotton was lost by fire. There was proof also tending to show that the car was a close one, that the company's smoke

stacks were protected by the most approved apparatus for preventing the escape of sparks, that they had on the train a portable extinguisher, and all the necessary employees and instruments of a first-class road to discover and extinguish accidental fires.

The defendant further proved that the cotton was in this case guaranteed to be carried through to New York at a much cheaper rate than it could have been shipped if it had been sent to the end of defendant's road and there reshipped, the rate on such freight to Louisville alone being more than two-thirds of the entire charge; that the defendant took no through freight except upon these bills of lading, without which the shipper would be required to reship from road to road; that it was the custom of the defendant to give bills of lading for local freight between Memphis and Louisville, or not, at the option of the shipper, the bills of lading in such cases containing in substance the same stipulations and conditions as those of the bill of lading in this case.

In *Owell* v. *Adams Express Company*, 1 Cent. L. J., 186, this court held it to be well settled by the current of American authority, that common carriers may, outside of their responsibility for negligence and bad faith, limit their liability by special contract. The case of *York Company* v. *Central Railroad*, 3 Wall., 113, was cited, where it was held that a bill of lading, by which the carrier agreed to deliver the property, "fire and the unavoidable dangers of the river only excepted," was a special and valid contract. And it was said that if, as in that case, the carrier

may stipulate not to be chargeable for loss by fire, he might also, as in the case then before the court, stipulate not to be liable for loss by robbery. "Ordinarily," adds Judge McFarland, who delivers the opinion of the court, "we would suppose, if there be nothing to raise a contrary presumption, that the natural presumption would be that the shipper was apprised of the contents of the receipt, and assented to its terms. And this would certainly be so, where the terms of the contract were in accordance with the business of the company, to which the shipper had assented in previous transactions." It was further held in this case, that a stipulation limiting the common law liability of the carrier, in order to be binding, must be based on a special consideration, such as a lower rate of freight, or something equivalent."

The present suit was brought before this decision was made, and the learned counsel of the plaintiffs express a wish to be heard on the points involved, if the court should entertain any doubt of the correctness of the conclusions therein announced. Unquestionably, much might be said, on the one hand, on the policy of allowing common carriers to limit their common law liabilities, and, on the other hand, on the impolicy of interfering with the rights of parties to make such contracts as they may see proper. Perhaps in this, as in so many other vexed questions, while an adherence to either extreme may be more logical and better sustained by principle, the middle course, into which the courts have certainly fallen, is best in its practical results, both because it is more

flexible, and therefore capable of being adapted to varying exigences, and because it subjects to less restraint the great interests of the commerce upon which so much of our modern civilization rests. "A modification," says the Supreme Court of the United States, "of the strict rules of responsibility, exempting the carrier from liability for accidental losses, where it can be safely done, enables the carrying interest to reduce its rate of compensation, thus proportionally relieving the transportation of produce and merchandise from some of the burden with which it is loaded." *Railroad Company* v. *Lockwood,* 17 Wall., 360.

We are content with the conclusions heretofore reached. These conclusions are, in brief, that the common carrier may, by general stipulations based on sufficient consideration, limit his liabilities, except such as grow out of his negligence or bad faith; that this stipulation may be embodied in the bill of lading, in which case "ordinarily," if there be nothing to the contrary, "the natural presumption would be that the shipper was apprised of the contents of the receipt, and assented to its terms," and that a lower rate of freight or something equivalent will be a sufficient consideration for the stipulation.

Some courts, while yielding to the current of authority on the main point, have at the same time run counter to it, and involved themselves in useless refinements, by refusing to recognize what Judge McFarland very properly calls the "natural presumption," arising from the acceptance by the shipper of a bill of lading embodying the stipulations, and by

requiring an uncertain quantum of evidence *aliunde* to establish a contract.

It were better to adhere to the old law, and refuse to recognize the modern innovations, than to resort to such niceties which must lead to harassing litigation, and render it difficult, if not impossible, for the profession to advise.

It is the dictate of common sense, that when a written instrument is received in the execution of a contract, its contents are known and assented to, and *a fortiori*, if there be nothing to raise a contrary presumption. In this view, most of the questions which have been so ably argued by the counsel of the plaintiff may be considered as settled.

The stipulation against the liability for loss by fire was valid; the acceptance of the bill of lading, embodying that stipulation raised a presumption that the stipulation was known and assented to, and the lower rate of freight by the contract for through transportation was a sufficient consideration.

. The judge below said to the jury: "I charge you, that if you find from the testimony, that at the time the plaintiffs delivered the cotton to the defendant, the defendant delivered to them the bill of lading without objection, the plaintiffs *prima facie* accepted it, and assented to all of its provisions as the contract of transportation. But this is a mere presumption, which may be rebutted by other proof; and if from the proof you fail to find that plaintiff accepted the bill of lading as the contract for transportation of their cotton, you will find for the plaintiffs. If you should

be satisfied that plaintiffs delivered to defendant their cotton, and the defendant agreed to transport it to New York at a certain price, and that after this agreement, defendant sent the bill of lading to plaintiffs, I charge you that the mere fact of the plaintiff's receiving the bill of lading would not be an acceptance by them of its terms, and they could in this event rely upon the previous agreement." There is no error in this charge of which the plaintiffs can complain.

Upon the point of special consideration the judge said: "I charge you, if you find the defendant's road only extended to Louisville, Ky., and that the defendant gave the bill of lading through to New York, whereby the plaintiffs were released from going to Louisville and the *termini* of other connecting lines from there to New York, to tranship their cotton; that the defendant agreed to deliver to New York at ninety cents per bale guaranteed. and that this was greatly less trouble and expense to the plaintiff than the transhipping would be, this would be a sufficient special consideration for the provisions of the bill of lading against the responsibility of defendant for the loss of the cotton by fire." Although the language touching the relieving of the plaintiffs "from going" to Louisville and the *termini* of other connecting lines, is perhaps inaccurate, since the reshipment might be made without the shipper's actually going to those points, the charge is substantially correct.

When a failure to deliver is shown, the burden of

proof is upon the common carrier to bring himself within the exemptions of the law, or the contract. *Turney* v. *Wilson*, 7 Yerg., 340. Exemptions by contract merely reduce the responsibilities, without changing the character of the carrier.

There seems to be some conflict in the authorities whether, when the loss is shown to have been occasioned in one of the excepted modes, the burden is upon the shipper to show negligence, or on the carrier to show that the occurrence was not the result of negligence. Our decisions are, in the analogous cases of the killing of stock and burning of houses by sparks from the engine, that the burden is upon the railroad company. *Burke* v. *Louisville & Nashville R. Co.*, 7 Heisk., 451; *Horne* v. *Memphis & Ohio R. Co.*, 1 Cold., 72.

Be this as it may, the defendant in this case assumed the burden, a fact taken for granted by the court in its entire charge, and is expressly said, in the special instructions asked for by the plaintiff, to be conceded.

The charge upon the subject of negligence was addressed to the loading of the cotton, the character of the cars on which it was loaded, the perfection of the engine in having the latest improvements to prevent the emission of sparks, the necessity of having employees to discover and put out the fire, and the proper means of saving the property. And on each of these points the charge throws the burden on the defendant. "It was the duty of the defendant," says his Honor, "to load the cotton in substantial and

closely covered cars, and if they failed to do this they were negligent." "It was the duty of the defendant to have locomotives and cars of the latest and most improved construction in railroading, and a sufficient number of hands kept with the train, and so disposed or posted on the train as to discover the fire as soon as, under all the circumstances, it could be discovered, and to have them discharging their duty, and if they failed in this respect they were negligent." "It was defendant's duty when the fire was discovered to use every possible means to put it out, and to have every means at hand that the most advanced stage of the art of railroading demands." There is no error in these charges, or in the language of the court used in connection therewith, either in the way of direction or illustration, of which the plaintiffs can complain.

After the judge had written out for the bill of exceptions his oral charge to the jury, he made a correction of that part of it relating to the acts of the employees after the discovery of the fire. Precisely how this correction dovetails into the charge does not appear. Abstractly, the correction is innacurate and erroneous, if construed as insisted upon by the plaintiff's counsel, but the doubt is whether the entire charge, thus modified, is open to the construction, or so substantially wrong as to require a reversal of the judgment. The charge is in these words: "It was defendant's duty to put out the fire as soon as discovered, if this was possible, put it out without bursting the car open if possible, or if not, to burst it open if this means could prove successful. But if,

under all the circumstances surrounding them when the fire was discovered, the hands on the train felt it doubtful whether they could have extinguished the burning car, and in view of this, and the fact that if they failed the debris might be left to encumber the track and endanger other trains going or coming, it was not negligence for them to run the train on a siding before they attempted to extinguish the fire. But if you are satisfied that they could have put out the fire without running on the siding, it was negligence in them not to do so. So, too, if they could have broken open the car and removed the cotton, they should have done so, and if they did not it was negligence."

The correction of this charge adopted by the judge is thus worded: " If the fire could have been extinguished when first . discovered, but the employees of the road in their judgment carried the car to the Memphis junction, and could not save it after it was carried there, the defendant is not liable for the mistake of the employees in not having attempted to extinguish it when first discovered."

If his Honor meant by this language that the company would not be liable for the mistakes of its employees if such mistakes amounted to negligence in putting out the fire and saving the cotton, he was clearly in error. It would be otherwise, however, if he meant that although the fire could have been extinguished when first discovered, yet if the employees felt it doubtful whether they could have extinguished the burning car, and, in view of this and the fact

that if they failed the debris might be left to encumber the track and probably endanger other trains going or coming, then the defendant would not be liable for the mistake of the employees in not having attempted to extinguish the fire when first discovered. For in that view the charge was not that the company would not be bound by the mistakes of its agents, but that it was not necessarily liable for negligence by reason of the mistake of judgment of the employees, conceding that there was a mistake in running to the siding, instead of at once attempting to extinguish the fire.

A railroad, as this court has held, is not bound to use "all the diligence which human sagacity can suggest." "In case of an accident or emergency," says Judge Freeman, "a railroad company is bound to use such means as would suggest themselves to, and be within the knowledge and capacity of well-informed and competent business men in such positions, and such diligence as prudent, skillful business men in that kind of business might fairly be expected to use under like circumstances." *Nashville & Chattanooga R. Co.* v. *David*, 6 Heis., 261.

The residue of the charge fairly implies this restricted meaning of the language used. And we are the better content with this conclusion, as the evidence embodied in the bill of exceptions shows that there were no facilities for extinguishing a fire at the point where the discovery was made, nor could the water in the engine have been brought to bear upon it.

The special instructions asked for by the plaintiff

were either properly refused, or actually given in the charge. There was no error in saying to the jury that the carrier was only bound to safely pack the cotton, not to loosely pack it with a view to the possible contingency of fire. Nor in adding that the company were not required to keep on hand grappling hooks, or other means of removing packed goods, in the absence of all proof tending to show that such instruments were carried on well-appointed roads.

There is no error in the judgment, and it must be affirmed.