SCOTT and others *v.* BALTIMORE, C. & R. STEAM-BOAT CO.

ODELL and others, *v.* SAME.

PURCELL and others *v.* SAME.

*(Circuit Court, D. Maryland.    January 15, 1884.)*

1. CARRIER—LIABILITY FOR GOODS DESTROYED BY FIRE ON WHARF.
     Goods were delivered to the defendant, a steam-boat company, for transportation.    The bills of lading did not designate any particular vessel.    The goods were burned on the wharf by a fire not occurring through any neglect of the defendant.    *Held* that, even though the goods were negligently delayed by the defendant, the delay was not the proximate cause of the loss.
     *Railroad Co.* v. *Reeves,* 10 Wall. 190.

2. SAME—BILL OF LADING.
     The bills of lading stipulated, "dangers of the seas, fire, breakage, leakage, accidents from machinery and boilers, excepted, and with liberty to tow and assist vessels in all situations."    *Held,* that this was an exemption from liability from loss by fire while the goods were on the wharf awaiting transportation, as well as when on board the vessel.

At Law.

*Bernard Carter*, for plaintiffs.

*John H. Thomas*, for defendant.

MORRIS, J.    These are three suits instituted to recover from the defendant steam-boat company for goods which the plaintiff delivered on the company's wharf at Baltimore, on December 21, 1877, to be transported by it, and which were burned on the wharf by a fire during that night.    It is admitted that the fire was not occasioned by any want of care on the part of the company, and that after the fire broke out all possible effort was made to extinguish it and save the goods.    By agreement the cases have been tried before the court without a jury.    The steam-boat company had, at the time the goods were received by it, a daily line of steamers from Baltimore to West Point on the York river, and these goods were to be transported by that line, and thence by railroad to Richmond and other more southern points.    The steamers sailed daily at 4 P. M., and it was known that goods received after 3 P. M. were not usually sent by that day's steamer.    In fact, goods were received by the company during all the business hours of the day, and bills of lading given; none of them, however, specifying that the goods were to be forwarded by any particular vessel; and whenever goods were received during the day, which for any reason could not go by that day's boat, they were sent forward the next day.

Evidence has been submitted by the plaintiffs tending to prove that the goods were delivered at the company's wharf before 3 o'clock, and in time to have gone by that day's boat; but the evidence was not entirely convincing, and in the face of the positive testimony of the agent of the steam-boat company, that at 3 o'clock of that day there were no goods for the south remaining on the wharf, I am not prepared to find as a fact that the goods were delivered in time for that day's boat.    I do not, however, consider the finding of this fact of any importance, for, as I understand the law, even if the company could have forwarded the goods by that day's boat and negligently omitted to do so, it would not affect its liability in these suits.    The law is settled that in cases of this kind, unless the delay in forwarding the goods is so unreasonable in its nature as to be equivalent to a deviation, or unless the loss of the goods is the direct and proximate result of the delay, the carrier is not liable unless he would be answerable under his liability as carrier without reference to the delay.    And where goods in the custody of a carrier are destroyed by storms, floods, or fire, in a place in which they would not have been but for the negligent delay of the carrier, the courts hold that the direct and proximate cause of the injury is the flood or the fire, and that the delay in transportation is only the remote cause.    The supreme court of the United States so decided in *Railroad Co.* v. *Reeves*, 10 Wall. 190, and it was so held by the supreme court of Massachusetts in *Hoadley* v. *Northern Transp. Co.* 115 Mass. 304.    This latter case was a suit to recover for the loss of goods by fire, which the

carrier had delayed forwarding, and which were burned at the place where they were delivered into his custody. The bill of lading in that case exempted the carrier from liability for loss from fire while the goods were in transit, or while in depots or warehouses or places of transhipment. It was held that the destruction of the goods by fire could not reasonably have been anticipated as a consequence of the detention; that the delay did not destroy the goods; and that there was no connection between the fire and the detention.

The important question in these cases, therefore, is whether, by the language of the bills of lading, the steam-boat company has exempted itself from its common-law liability for the loss of the goods by fire while on its wharf; for if, by the bills of lading, it is exempt for the loss by fire, it makes no difference, in my judgment, that the company was to blame for the detention; and if, by the bills of lading, it has not exempted itself, it is liable notwithstanding it was not to blame for the detention. The right of common carriers, by proper stipulations in a bill of lading, to limit their common-law liability for losses by fire, when the fire is not attributable to their misconduct, or that of any persons or agencies employed by them, is well settled, (*York Co.* v. *Central R. R.* 3 Wall. 107;) and by the act of congress of March 3, 1851, (Rev. St. § 4282,) it was enacted that the owners of vessels, except those used in rivers or inland navigation, shall not be answerable for loss by fire of any goods *on board,* unless the fire is caused by their design or neglect. If, therefore, the language of the bill of lading is sufficiently explicit to exempt the company from loss by fire, there can be no doubt as to the lawfulness of such an exemption. The language contained in the bill of lading given for the goods of the plaintiffs J. W. Scott & Co. and Odell, Ragan & Co. is: "Dangers of the seas, *fire, leakage, breakage,* accidents from machinery and boilers, excepted, and with liberty to tow and assist vessels in all situations." The language of the bill of lading for the goods of the plaintiffs Purcell, Ladd & Co. is: "And it is expressly contracted and agreed that loss or damage by *weather, fire, leakage, breakage,* and dangers of the seas are excepted."

It is contended on behalf of the plaintiffs that under the strict rules of construction applicable to stipulations by which the carrier seeks to limit his common-law liability the word "fire" in these bills of lading, and more particularly in the one first mentioned, being classed with dangers of the seas and other risks of navigation, it is to be taken as applicable only to fire after the goods are laden on board. After careful consideration I find myself unable to assent to this construction. The liability of the carrier as carrier begins from the moment of the receiving the goods, (Hutch. Carr. § 89,) and although preparatory to the transportation they are detained by him on his wharf or in his storehouse his responsibility then is in no respect different from his responsibility after the actual transportation has commenced. It is difficult, therefore, to see why, if he stipulates gen-

erally for exemption from losses from fire, he should not be understood to mean exemption while the goods are in his possession preparatory to their being laden, as well as afterwards. In most instances there must be some interval of time between the reception of the goods and their being actually laden on board the vehicle of transportation, and as the law sanctions contracts by which the carrier exempts himself from the risks of fire, it seems to me it would be a very strained and forced construction of these contracts now before me to hold that the exemptions in them from "*fire, leakage, and breakage*" do not apply to losses from those risks while on the wharf, because they are mentioned in the same sentences with other risks which are only encountered on the voyage itself.

I have not failed to consider the argument urged on behalf of the plaintiffs, based on the inconvenience and hardship occasioned by such an exemption as now upheld, arising from the fact that after the goods are delivered to the carrier the usual fire insurance which covers the goods while in the warehouse of the shipper is at an end, and that the ordinary marine policy does not attach until the goods are laden on board, and that as the shipper does not know whether the carrier has detained the goods on the wharf or has put them on board, he is at loss how to protect himself. This is, however, but one of the hardships resulting from the exemptions which carriers have been allowed to contract for. The lawfulness of such an exemption as that claimed in these present cases is too firmly settled by authoritative cases to be now doubted, and the difficulty is not to be cured by the court's refusing to give to the words of the contract their fair and reasonable meaning.

Verdict for defendant.